**Westlaw.**

2005 WL 545014                                              Page 1
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

H

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available

Supreme Court of Delaware.
Susan RIZZITIELLO, Plaintiff Below, Appellant,
v.
MCDONALD'S CORP., a California Corporation,
and McDonald's Restaurant of
Delaware, Inc., a Delaware Corporation,
Defendants Below, Appellees
No. 93,2004.

Submitted: Nov. 17, 2004.
Decided March 1, 2005.

**Background:** Former employee sued fast food restaurant, claiming that restaurant breached the implied covenant of good faith and fair dealing by treating her in a racially disparate manner and falsifying records in order to create a fictitious ground for terminating her employment. The Superior Court, New Castle County, granted summary judgment in favor of restaurant. Employee appealed

**Holdings:** The Supreme Court, Ridgely, J., held that:
(1) as a matter of first impression, in order to sustain a disparate treatment claim for a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that she suffered intentional discrimination because of her race, as evidenced by an employer's disparate treatment of her and similarly situated persons, and that the intentional discrimination resulted in an adverse employment action;
(2) fact that employee voluntarily resigned upon being notified of her suspension was insufficient evidence of an adverse employment action necessary to sustain her disparate treatment claim; and
(3) employee failed to establish claim that restaurant breached the implied covenant of good faith and fair dealing by falsifying records in order to create a fictitious ground for terminating her employment.
Affirmed.

**[1] Judgment ☞185(2)**
228k185(2) Most Cited Cases
In reviewing a motion for summary judgment, the Superior Court shall examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party to determine if there is any dispute of material fact.

**[2] Appeal and Error ☞893(1)**
30k893(1) Most Cited Cases
The Supreme Court reviews de novo the Superior Court's grant of summary judgment and in doing so it exercises plenary review.

**[3] Civil Rights ☞1138**
78k1138 Most Cited Cases
In order to sustain a disparate treatment claim for a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that she suffered intentional discrimination because of her race, as evidenced by an employer's disparate treatment of her and similarly situated persons, and that the intentional discrimination resulted in an adverse employment action.

**[4] Civil Rights ☞1138**
78k1138 Most Cited Cases
Fact that former employee voluntarily resigned upon being notified of her suspension was insufficient evidence of an adverse employment action necessary to sustain her disparate treatment claim against fast food restaurant for a breach of the implied covenant of good faith and fair dealing.

**[5] Labor and Employment ☞843**
231Hk843 Most Cited Cases
Former employee failed to establish claim that fast food restaurant breached the implied covenant of good faith and fair dealing by falsifying records in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 545014
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

Page 2

order to create a fictitious ground for terminating her employment, where it was undisputed that employee voluntarily resigned and was not terminated by restaurant.

**[6] Labor and Employment ⚖═40(2)**
231Hk40(2) Most Cited Cases
In Delaware, there is a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite.

**[7] Labor and Employment ⚖═79**
231Hk79 Most Cited Cases
Although at-will employment remains a heavy presumption in Delaware, every employment contract contains an implied covenant of good faith and fair dealing.

**[8] Labor and Employment ⚖═826**
231Hk826 Most Cited Cases
To establish a constructive discharge, the plaintiff is required to show working conditions so intolerable that a reasonable person would have felt compelled to resign; thus, something more than a hostile work environment is required.

**[9] Labor and Employment ⚖═826**
231Hk826 Most Cited Cases
The denial of possible future promotions is legally insufficient to support a claim of constructive discharge.

Court Below: Superior Court of the State of Delaware, in and for New Castle County, C.A. No. 00C-12-027.

Upon appeal from the Superior Court. **AFFIRMED**.

John R. Weaver, Jr., Esquire, Wilmington, Delaware; for Appellant

Michael P. Kelly, Esquire, of McCarter & English, LLP, Wilmington, Delaware, Michael L. Banks and Sean v Burke, Esquires, of Morgan, Lewis & Bockius, LLP, Philadelphia, Pennsylvania; for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

*1 The plaintiff-appellant, Susan Rizzitiello (the "plaintiff"); appeals a decision of the Superior Court granting summary judgment in favor of the defendants-appellees, McDonald's Corp. and McDonald's Restaurant of Delaware, Inc. (collectively the "defendants" or "McDonald's"). The plaintiff was an employee of McDonald's but resigned from employment when she was told she was being suspended pending an investigation of inventory issues. The plaintiff's appeal centers on her claims that McDonald's breached the implied covenant of good faith and fair dealing by treating her in a racially disparate manner and falsifying records in order to create a fictitious ground for terminating her employment.

The Superior Court thoroughly reviewed the record and found no evidence that the animosity between plaintiff and her supervisor at McDonald's was racially based. The Superior Court further concluded that plaintiff resigned her employment before any action was taken against her, other than a suspension pending an investigation, and that she did not establish a basis for constructive discharge. We agree with the conclusions of the Superior Court that defendants are entitled to summary judgment. Accordingly, we affirm.

**I.**

The plaintiff is a white female who was employed by the defendants from 1979 until the time she resigned in 1998. She started her career in the restaurant business in 1978 as a crew person at a McDonald's franchise located in Billings, Montana. The plaintiff then relocated to Pennsylvania in 1979 and obtained a position in one of the defendants' stores as a crew person. [FN1] The record shows that the plaintiff rose through the ranks at McDonald's. She was first promoted to a swing manager around 1980, then to a second assistant in 1981, next to a first assistant and finally to a store manager in 1987. The plaintiff also worked in various training positions in between her stints as a store manager.

While employed at McDonald's, animosity developed between the plaintiff and Leslie Mosley, an African-American woman also employed at McDonald's. Initially, the plaintiff was Mosley's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 545014
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

Page 3

store manager while Mosley was employed as a crew person. At the time the plaintiff resigned, the plaintiff was a store manager, and Mosley had risen to a level in which she was the plaintiff's supervisor.

Before she was promoted to supervisor, Mosley was the store manager at McDonald's Prices Corner store. While employed in this position, Mosley was suspended for one week because of missing inventory. At that time, the plaintiff was employed as a trainer with McDonald's. The plaintiff temporarily left her position as a trainer to manage the Prices Corner store in Mosley's absence. After McDonald's investigated the inventory issues, Mosley returned from her suspension to manage the Prices Corner store, and the plaintiff returned to her former position as a trainer.

Mosley was later promoted to a supervisor position, and was responsible for overseeing the operations of three to four McDonald's stores. [FN2] Upon the promotion of Mosley, the plaintiff was named the store manager at the Prices Corner location. Mosley was not initially responsible for overseeing the operations at her former store. She subsequently assumed this responsibility in 1997 after the Prices Corner supervisor at that time was relocated out of the country.

*2 While under Mosley's supervision, the plaintiff alleges that she made numerous complaints to McDonald's human resource's department that Mosley was "out to get her" and "wanted to see her fired." The present record, however, shows that the plaintiff never complained that she was being treated unfairly because of her race. The plaintiff admits that Mosley did not ever say anything racial or comment about the plaintiff's race. The plaintiff also alleges that when she was on vacation in late December 1997, Mosley, along with two other McDonald's employees, inputted inventory records on a computer at the Prices Corner store. It is the plaintiff's contention that Mosley falsified those records to create a fictitious ground for terminating her employment.

In January 1998, the plaintiff was suspended by McDonald's pending an investigation into missing inventory at the Prices Corner store. According to the plaintiff, a McDonald's human resources representative stated that the suspension would permanently remain on her record and prevent her from being promoted in the future. Rather than await the outcome of the investigation, the plaintiff immediately resigned. According to the plaintiff's own affidavit, "I left the employment of McDonald's because no one in the company was listening to me and these misstatements [about food missing] would not permit me to be promoted."

II.
The plaintiff filed suit in the Superior Court alleging various causes of action pertaining to her employment with McDonald's. The defendants removed the action to federal court and, thereafter, moved to dismiss for failure to state a claim upon which relief may be granted. The United States District Court for the District of Delaware treated the defendants' motion to dismiss as a motion for summary judgment and dismissed all of the plaintiff's federal law claims. [FN3] The federal court then remanded the case to the Superior Court to address the state law claims. [FN4]

The defendants subsequently moved to dismiss the plaintiff's state law claims. The Superior Court dismissed the plaintiff's claims for negligence, emotional distress and slander, on the ground that the statute of limitations governing those claims had expired, but held that the plaintiff could go forward with an action for breach of the implied covenant of good faith and fair dealing on the theories of racial discrimination and falsification of records. [FN5]

Following discovery, the defendants filed a motion for summary judgment, and the plaintiff filed an answer opposing the defendants' motion. The Superior Court granted the defendants' motion for summary judgment. [FN6] The Superior Court first determined that there was no evidence to support the plaintiff's allegation that her termination was motivated by racial discrimination. [FN7] The Superior Court also concluded that although there was a genuine issue of material fact as to whether the inventory records were falsified, there was no constructive discharge or termination because the plaintiff had resigned. [FN8] The Superior Court finally held that the plaintiff's claims for disparate treatment, wrongful termination and constructive discharge fail because she resigned her employment before McDonald's could resolve the pending investigation against her. [FN9]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 545014                                                                                          Page 4
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

### III.

*3 [1][2] In assessing the claims of the parties, we begin by noting that the Superior Court decided this matter at the summary judgment stage. The Superior Court may grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." [FN10] The Superior Court shall examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party to determine if there is any dispute of material fact. [FN11] We review *de novo* the Superior Court's grant of summary judgment and in doing so we exercise plenary review. [FN12]

### IV.

The plaintiff's claim of racial discrimination was brought as a breach of the implied covenant of good faith and fair dealing. In essence, the plaintiff raises a claim of disparate treatment, arguing that McDonald's treated her differently (as a white female) after the investigation into inventory issues, as compared to McDonald's investigation into Mosley's inventory issues. The plaintiff argues that her employment with McDonald's has been terminated, while Mosley was reinstated and later promoted following the resolution of her inventory issues. It is undisputed, however, that plaintiff resigned before McDonald's had completed its investigation.

[3] This Court has not yet addressed what constitutes a *prima facie* case for a disparate treatment claim based on a breach of the implied covenant of good faith and fair dealing. Because this is an issue of first impression, we look to authorities outside of this jurisdiction for guidance.

Title VII of the Civil Rights Act of 1964 prohibits the discharge of "any individual" because of "such individual's race." [FN13] The United State Supreme Court has interpreted Title VII "to proscribe racial discrimination in private employment against whites on the same terms as racial discriminations against nonwhites ..." [FN14] In *McDonnell Douglas Corp v Green,* [FN15] the United States Supreme Court set forth a four-pronged test that requires a plaintiff to make out a **prima facie** case for **racial discrimination** under Title VII as follows:
  [The plaintiff has] the initial burden ... of establishing a **prima facie** case of **racial discrimination** ... by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [FN16]

We agree with the Superior Court's determination that the analysis in this case should proceed under a framework similar to that used to analyze a claim under Title VII. [FN17] We reach this conclusion because the discrimination alleged here is disparate treatment, which is the same type of discrimination for which the *McDonnell Douglas* test was formulated. [FN18] Thus, in order to sustain a disparate treatment claim for a breach of the implied covenant of good faith and fair dealing, a plaintiff must show that she suffered intentional discrimination because of her race, as evidenced by an employer's disparate treatment of her and similarly situated persons, and that the intentional discrimination resulted in an adverse employment action. [FN19]

*4 A thorough review of the record reveals no evidence that the plaintiff was suspended from McDonald's because of her race. After making the same finding, the Superior Court correctly concluded that there is no evidence that the animosity between the plaintiff and Mosley was racially based.

[4] We also agree with the Superior Court's conclusion that the plaintiff's disparate treatment claim must fail because McDonald's took no adverse employment action against her. The record clearly shows that the plaintiff voluntarily resigned from her store manager position at McDonald's immediately after learning that she was to be suspended pending an investigation of inventory issues. Thus, the plaintiff resigned before McDonald's took any action against her, other than notifying her that she was suspended pending an investigation into the missing inventory. A suspension pending an investigation was the identical process used in the case of missing inventory involving Mosley. Plaintiff understood that if the investigation cleared her, she would be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 545014
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

Page 5

restored to her position with no loss in pay. The fact that the plaintiff voluntarily resigned upon being notified of this suspension is insufficient evidence of an adverse employment action necessary to sustain a disparate treatment claim. [FN20]

## V.

[5] The plaintiff's falsification of records claims was also brought as a breach of the implied covenant of good faith and fair dealing. The plaintiff argues that she was terminated in violation of the implied covenant because certain McDonald's employees manufactured false grounds to cause her dismissal.

[6][7] In Delaware, there is a "heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." [FN21] Although at-will employment remains a heavy presumption in this State, every employment contract contains an implied covenant of good faith and fair dealing. [FN22] In *E I DuPont de Nemours & Co v Pressman*, this Court examined the scope of the at-will employment doctrine and the application of the implied covenant of good faith and fair dealing, and held that the doctrine of at-will employment is broad and the implied covenant is to be narrowly construed [FN23]

In *Pressman*, an employer intentionally manipulated an employee's personnel record to create a fictitious ground for his termination. [FN24] Specifically, the employee's supervisor engaged in a retaliatory campaign against him by misrepresenting his responsibilities and understating his accomplishments. [FN25] At trial, the employee plaintiff in *Pressman* successfully proved that the deceitful acts of the defendant's agents in manufacturing materially false grounds to cause the plaintiff's dismissal was a breach of the implied covenant. [FN26] On appeal, this Court held that an employee may sue the employer's for its agent's deceitful acts in manufacturing materially false grounds to cause the employee's dismissal, but limited the implied covenant to narrowly defined categories wherein the employer's conducted constituted an aspect of fraud, deceit or misrepresentation. [FN27] One category is established where the employer or the employer's agents have falsified or manipulated an employee's record to create a fictitious ground to terminate the employee. [FN28] The plaintiff in this case maintains that McDonald's actions fell within this category.

*5 To support a claim falling into this category, the plaintiff has the burden to prove both falsification of her records and termination of her employment. [FN29] The record shows that the plaintiff failed to satisfy this burden. Although, as the Superior Court found, there was a genuine issue of material fact as to whether the inventory records were falsified, it was undisputed that the plaintiff voluntarily resigned and was not terminated by McDonald's. Rather than await the outcome of the investigation, the plaintiff resigned upon being told of her suspension and an investigation, because she believed that, whatever the outcome of the investigation, the suspension would prevent her from being promoted.

We recognized in *Pressman*, that an employee who voluntarily resigns rather than being terminated may have a claim for constructive discharge. [FN30] The plaintiff makes that claim here To support her position that McDonald's made her work environment so intolerable that she had no choice but to resign, the plaintiff points to the following facts: (1) she had worked for McDonald's for over twenty years; (2) Mosley was "out to get her" and "wanted to see her fired"; (3) she made numerous complaints to McDonald's human resource's department regarding Mosley, but received no help; (4) Mosley and other McDonald's employees allegedly falsified inventory records to create a fictitious ground for her termination; (5) she was denied access to her computer at the Prices Corner store, and (6) a McDonald's human resource's representative indicated that the suspension would permanently remain on the plaintiff's record and prevent her from being promoted in the future. The plaintiff argues that the Superior Court's failure to consider these facts as a whole amounted to reversible error.

[8][9] To establish a constructive discharge, the plaintiff was required to show "working conditions so intolerable that a reasonable person would have felt compelled to resign.' [FN31] Something more than a hostile work environment is required. [FN32] The record shows that McDonald's was initiating an

© 2005 Thomson/West. No Claim to Orig. U S. Govt. Works

2005 WL 545014
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

Page 6

investigation and that plaintiff chose to resign "because no one in the company was listening to me and these misstatements [the alleged falsification of records] would not permit me to be promoted." Given this admission of why she resigned, we agree with the Superior Court that the issues of fact surrounding the alleged falsification of records were moot. We also agree with the Superior Court's conclusion, which is supported by case law, that the denial of possible future promotions is legally insufficient to support a claim of constructive discharge. [FN33] On this record, therefore, the defendants were entitled to summary judgment

## VI.

For the foregoing reasons, we affirm the decision of the Superior Court granting summary judgment in favor of the defendants

FN1. While living in Montana, the plaintiff was employed by a McDonald's franchise. After the plaintiff moved from Montana, she has worked only at company owned McDonald's stores.

FN2 It appears from the record that a store manager is responsible for the complete operations of only one McDonald's store, and a supervisor is responsible for overseeing the operations of several McDonald's stores.

FN3 *Rizzitiello v McDonald's Corp.*, 2001 WL 1180277, 2001 U.S Dist LEXIS 15747 (D.Del ).

FN4 *Id*

FN5. *Rizzitiello v McDonald's Corp*, Del Super., C A. No. 00C-12- 027 (Oct. 24, 2002) (Mem.Op.).

FN6. *Rizzitiello v McDonald's Corp*, 2004 WL 396411, 2004 Del Super LEXIS 46.

FN7 *Id* at *2, 2004 Del Super LEXIS at *7.

FN8 *Id* at *3, 2004 Del. Super LEXIS at *10-*11.

FN9. *Id* at *2, *3, 2004 Del Super LEXIS at *8, *11.

FN10 Del. Super Ct. Civ. R. 56(c).

FN11. *Motorola, Inc v Amkor Tech., Inc*, 849 A.2d 931, 935 (Del.2004) (citing *Rhudy v. Bottlecaps, Inc.*, 830 A 2d 402, 405 (Del.2003)).

FN12. *Telxon Corp v. Meyerson*, 802 A.2d 257, 262 (Del.2002) (citing *Stroud v Grace*, 606 A.2d 75, 81 (Del.1992)); *Merrill v. Crothall-American, Inc*, 606 A.2d 96, 99 (Del.1992).

FN13. 42 U.S.C. § 2000e-2 (a)(1) (2005).

FN14. *McDonald v. Santa Fe Trail Transp. Co*, 427 U.S. 273, 279- 80, 96 S.Ct 2574, 49 L.Ed.2d 493 (1976).

FN15. 411 U.S. 792, 93 S Ct. 1817, 36 L Ed.2d 668 (1973).

FN16. *Id.* at 802, 93 S Ct 1817

FN17 Cf. *Giles v. Family Court of the State of Delaware*, 411 A.2d 599, 601 (Del.1980) (providing that violations of 19 Del. C § 711 dealing with unlawful employment practices shall be analyzed under the same test as Title VII claims).

FN18. *Id*

FN19. See *Burlington Indus, Inc. v Ellerth*, 524 U.S 742, 768- 69, 118 S.Ct 2257, 141 L.Ed.2d 633 (1998).

FN20. See *Hazel v Medical Action Indus*, *Inc*, 216 F.Supp.2d 541, 547 (W.D.N.C.2002) (citing *Evans v. Davie Truckers, Inc*, 769 F.2d 1012, 1014 (4th Cir.1985)) ("The fact that plaintiff voluntarily resigned rather than accept the reassignment is also not evidence of an adverse employment action."). See also *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir.1997); *Shealy v. Winston*, 929 F.2d 1009, 1012-13 (4th Cir 1991)

© 2005 Thomson/West. No Claim to Orig. U S. Govt Works.

2005 WL 545014
--- A.2d ---
(Cite as: 2005 WL 545014 (Del.Supr.))

Page 7

(both cases providing that a cognizable claim under Title VII does not exist where the plaintiff voluntarily resigns).

FN21. *E.I. DuPont de Nemours & Co v. Pressman,* 679 A.2d 436, 440 (Del.1996) (citing *Merrill,* 606 A.2d at 101).

FN22. *Merrill,* 606 A.2d at 101.

FN23. *Pressman,* 679 A.2d at 437.

FN24. *Id.* at 438-39

FN25. *Id.*

FN26. *Id.* at 438.

FN27. *Id.* at 440, 442-44.

FN28. *Id.*

FN29. *Id.*

FN30. *See Pennsylvania State Police v. Suders,* --- U.S. ----, 124 S.Ct. 2342, 2351, 159 L.Ed.2d 204 (2004) (citing 1 B. LINDEMANN & P GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 838-839 (3d ed. 1996)) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.").

FN31. *Id.* at 2354

FN32. *Id.*

FN33. *See, e.g., Ternullo v Reno,* 8 F.Supp.2d 186, 193 (N.D.N.Y.1998) ("Denial of a promotion does not support a claim of constructive discharge"); *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 751 F.Supp 1175, 1192 (E.D.Pa.1990) ("A denial of promotion, even if discriminatory, does not alone suffice to establish constructive discharge").

2005 WL 545014 (Del Supr.)

**Briefs and Other Related Documents (Back to top)**

. 2004 WL 2605492 (Appellate Brief) Appellant's Reply Brief (Sep. 17, 2004)Original Image of this Document (PDF)

2004 WL 1718900 (Appellate Brief) Appellant's Opening Brief (Jun 29, 2004)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d
2004 WL 609329 (D.Del.)
(Cite as: 2004 WL 609329 (D.Del.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware
In re: STUDENT FINANCE CORPORATION,
Debtor.
STUDENT FINANCE CORPORATION, Plaintiff,
v.
ROYAL INDEMNITY CO , Defendant.
No. 02-11620, Civ.A. 03-507 JJF, 02-6803 LK.

March 23, 2004.
L. Jason Cornell, of Fox Rothschild LLP, Wilmington, Delaware, Hal Baume, of Fox Rothschild LLP, Lawrenceville, New Jersey, David A. Gradwohl, Andrew W. Bonekemper, and Anthony P. DeMichele, of Fox Rothschild LLP, Lansdale, Pennsylvania, for Plaintiff/Debtor Student Finance Corporation, of counsel.

Lawrence C. Ashby, Philip Trainer, Jr., and Gregory A Taylor, of Ashby & Geddes, Wilmington, Delaware, Michael H. Barr, Peter D. Wolfson, and Kenneth J. Pfaehler, of Sonnenschein Nath & Rosenthal, New York, New York, Alan S. Gilbert, of Sonnenchein Nath & Rosenthal, Chicago, Illinois, for Defendant Royal Indemnity Company, of counsel.

*OPINION*

FARNAN, J

*1 Presently before the Court is Defendant Royal Indemnity Company's ("Royal") Motion To Dismiss. (D.I.6.) [FN1] For the reasons set forth below, the Court will grant in part and deny in part Royal's Motion.

> FN1. The docket item numbers referenced herein are the docket items in the adversary proceeding *Student Finance Corporation v. Royal Indemnity Co*, Adversary Proceeding Number 02-06803 LK.

BACKGROUND
This is an adversary proceeding arising from the Chapter 11 bankruptcy filing *In re Student Finance Corporation*. The parties to this adversary proceeding stipulated to the withdrawal of the reference to the bankruptcy court, which was granted by Chief Judge Robinson. The instant action was subsequently assigned to this Court.

Student Finance Corporation ("SFC") engages in the origination and purchasing of student loans, primarily for truck driving school students. [FN2] SFC, along with its affiliates, obtained funds to purchase and originate student loans from warehouse lines of credit provided by the Wilmington Trust Co. and PNC Bank. Once SFC exhausted these warehouse lines of credit, SFC and its affiliates packaged loans it purchased or originated into portfolios and sold them on the secondary market (the "securitizations") to financial institutions or insurance companies. To continue selling its portfolios on the secondary market, SFC required credit risk insurance which it obtained from AIG. In 1999, AIG discontinued this line of insurance. Thereafter, SFC obtained credit risk insurance from Royal.

> FN2. As the instant motion is a motion to dismiss, the Court has taken the facts from SFC's Complaint.

Royal continued to provide SFC with credit risk insurance for its securitizations through November of 2001 In December of 2001, SFC alleges that Royal verbally agreed to issue it one more credit risk insurance policy. In February of 2002, Royal was told by its parent company to discontinue issuing credit risk insurance. Royal subsequently announced that it was exiting the credit risk insurance business; however, SFC alleges that Royal assured it that Royal would issue one last

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 609329 (D.Del.)  
**(Cite as: 2004 WL 609329 (D.Del.))**

Page 2

policy. SFC alleges that Royal later stated that it would only consider doing so if SFC executed two promissory notes (the "Notes") whereby SFC agreed to borrow approximately twelve million dollars from Royal that would be used to make forbearance payments to Wells Fargo, who was the trustee of the securitizations. All the proceeds of the Notes went directly to Wells Fargo.

SFC alleges that after it complied with Royal's request Royal never issued SFC the credit risk insurance policy as promised. SFC alleges that, in reliance on Royal's promises, it continued to approve and fund student loans. In its Complaint (D.I.1), SFC asserts six claims against Royal. This is Royal's Motion to Dismiss Counts I and II pursuant to Rule 9(b) and Counts I-VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

STANDARDS OF REVIEW  
I. Rule 9(b)

Rule 9(b) requires a party alleging fraud or mistake to plead with particularity the circumstances constituting its claims. Fed R.Civ.P. 9(b). The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.1997). Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time[; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." ' *In re Rockefeller Ctr. Prop., Inc Sec Litig*, 311 F 3d 198, 216 (3d Cir.2002) (quoting *In re Nice Sys*, 135 F.Supp.2d 551, 557 (D.N.J.2001))

II. Rule 12(b)(6)

*2 A motion to dismiss tests the legal sufficiency of the complaint. *Conley v Gibson*, 355 U.S. 41, 45-56 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "must accept as true the factual allegations in the [c]omplaint and all reasonable inferences that can be drawn therefrom." *Langford v City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2000). A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief. *Id*

DISCUSSION  
I. Whether SFC Has Pled With Particularity Fraud And Negligent Misrepresentation

Royal contends that Counts I, negligent misrepresentation, and II, fraud, of SFC's Complaint should be dismissed because SFC has failed to plead these claims with particularity as required by Rule 9(b). Royal contends that SFC's Complaint does not identify the speaker of the alleged misrepresentations nor, with one exception, to whom the false statements were made. Royal also contends that SFC asserts only generalized and conclusory descriptions of misrepresentations made by Royal. SFC responds that the Rule 9(b) standard is generous in the Third Circuit and that its allegations of fraud and negligent misrepresentation satisfy Rule 9(b)'s requirements. In addition, SFC requests, in the event the Court agrees with Royal, that it be granted leave to amend its Complaint.

After reviewing the Complaint in light of the Rule 9(b) standards recited above, the Court concludes that SFC has failed to satisfy the pleading requirements of Rule 9(b). Nowhere in its Complaint does SFC identify the speaker of Royal's alleged misrepresentations. This is a failure to satisfy the particularity requirements of Rule 9(b). See *Klein v. Gen. Nutrition Co, Inc.*, 186 F.3d 338, 345 (3d Cir.1999) (stating that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements .") Although SFC contends that, according to *Brown v. SAP America, Inc.*, 1999 WL 803888 (D.Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s requirements, to the extent *Brown'* s holding conflicts with *Klein v. General Nutrition Co., Inc*, the Court declines to extend *Brown* to the facts in this case. See also *F.D.I.C. v Bathgate*, 27 F.3d 850, 876 (3d Cir.1994) (holding that a failure to identify the speaker of alleged misrepresentations amounted to a failure to satisfy Rule 9(b)); *Liafail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861, at *4 (D.Del. Nov. 25, 2002).

The Court also concludes that SFC's allegations of material omissions fail to satisfy Rule 9(b)'s

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609329 (D.Del.)
(Cite as: 2004 WL 609329 (D.Del.))

Page 3

pleading requirements. SFC bases, in part, its fraud and negligent misrepresentation claims on material omissions by Royal, yet never identifies what facts withheld by Royal induced SFC to act. Moreover, although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases, in the instant case, SFC does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within Royal's control. See F.D.I.C., 27 F.3d at 876. Therefore, SFC has given the Court no reason to relax "the normally rigorous particularity rule" based upon lack of knowledge or control. Burlington, 114 F.3d at 1418. Accordingly, to the extent Counts I and II of SFC's Complaint are based on material omissions by Royal, the Court concludes that SFC has failed to satisfy Rule 9(b). [FN3]

> FN3. Royal also contends that *Brug v. The Enstar Group, Inc.*, 755 F.Supp. 1247 (D.Del.1991), and *Brown v. The Buschman Co.*, 2002 WL 389139 (D.Del.2002), compel the Court to dismiss Counts I and II of SFC's Complaint for failure to adequately plead scienter. Because the Court concludes that *Brug* and *Brown* are distinguishable from the facts in this case, the Court disagrees. The plaintiffs in *Brug* and *Brown* made only general averments, without any supporting facts, of intent or scienter. *Brug*, 755 F.Supp. at 1254-55; *Brown*, 2002 WL 389139, at *8. Therefore, the *Brug* and *Brown* courts concluded that they had no choice but to dismiss the plaintiffs' claims. In this case, however, SFC has identified facts by which the Court infers intent. In paragraphs 31 and 33 of its Complaint (D.I.1), SFC alleges that Royal indicated that it would extend additional credit risk insurance following its announcement that it was leaving the credit risk insurance business if SFC would agree to borrow money from Royal to be used in making forbearance payments to Wells Fargo. SFC alleges that it complied with Royal's condition, but that Royal never extended additional credit risk insurance. The Court concludes that these facts are sufficient by which to infer intent or scienter.

*3 In sum, the Court concludes that Counts I and II of SFC's Complaint fail to satisfy the pleading requirements of Rule 9(b). [FN4]

> FN4. In its reply brief (D.I.18), Royal contends for the first time that all of SFC's claims are based on allegations of fraud, and therefore, if the Court finds that SFC has failed to properly plead Counts I and II, then all of SFC's claims must be dismissed. Without addressing the merits of Royal's arguments, the Court concludes that Royal is not entitled to dismissal of the remaining claims of SFC's Complaint on Rule 9(b) grounds. Rule 7.1.3 of the Local Rules for the District of Delaware ("Local Rule 7.1.3") provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). The practice of reserving arguments for reply briefs "amounts to impermissible 'sandbagging.'" *Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.*, 2002 WL 531555 (D.Del. March 26, 2002) (quoting *Jordan v. Bellinger*, 2000 U.S. Dist. LEXIS 19233, *18 (D Del. April 28, 2000)). By waiting until its reply brief to assert that all of SFC's claims should be dismissed pursuant to Rule 9(b), Royal has violated Local Rule 7.1.3. Accordingly, the Court rejects Royal's attempt to dismiss SFC's remaining claims under Rule 9(b).

II. Whether Counts I-VI State A Claim Upon Which Relief May Be Granted

A. *Counts I And II, Negligent Misrepresentation And Fraud*

Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del.1983). The only difference between an action for fraud and negligent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4
2004 WL 609329 (D.Del.)
**(Cite as: 2004 WL 609329 (D.Del.))**

misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth. *Id.* By its Motion, Royal seeks to dismiss Counts I and II for failure to plead elements 1, 4, and 5.

1. *Statement Of A Material Fact*

Royal contends that SFC has not adequately pled the existence of a material fact because the statements SFC alleges were false or negligent concern future undertakings. (D.I. 7 at 8.) SFC responds that the Court should not be persuaded by Royal's arguments because a claim for fraud may be based upon statements of future results.

Under Delaware law, "[o]pinions and statements as to probable future results are not generally fraudulent even though they relate to material matters." *Esso Standard Oil Co. v Cunningham,* 114 A.2d 380, 383 (Del. Ch.1955); *Craft v Bariglio,* 1984 WL 8207, at *8 (Del. Ch March 1, 1984). Applying this principle and the Rule 12(b)(6) standard of review to the allegations in SFC's Complaint, the Court concludes that it would be premature to dismiss Counts I and II for failure to plead a material fact.

In its Complaint, SFC alleges that after Royal made a public announcement that it was leaving the credit risk insurance business, "Royal continued to represent to SFC that one more policy *would* be issued to SFC." (D.I. 1 at ¶ 31) (emphasis added). Further, SFC alleges that Royal contacted SFC's CEO and "told him that Royal would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance payments' to Wells Fargo." *Id* at ¶ 33. Taken as true, SFC's assertions constitute more than mere "[o]pinions and statements as to probable future results." *See Esso Standard,* 114 A.2d at 383. Thus, the Court concludes that the combined effect on SFC of Royal's statements of intent to issue a new policy suffice, for the purposes of this Motion, to plead the existence of misstatements or negligent misrepresentations made to induce SFC to borrow money from Royal.

2 *Justifiable Reliance*

*4 Royal contends that SFC has not pled justifiable reliance because, in the circumstances of this case, a reasonable person would not have relied upon a verbal commitment that Royal would issue an additional credit risk insurance policy. In response, SFC contends that its reliance upon Royal's misrepresentations was justifiable because, unlike the precedent relied upon by Royal, in this case there was no written agreement between the parties that made Royal's oral assurances unworthy of SFC's reliance.

Delaware courts follow the Restatement's definition of justifiable reliance. *See Lock v Schreppler,* 426 A.2d 856, 863 (Del.Super.1981), *superceded by statute in part on other grounds as stated in, Amato & Stella Assoc. v. Florida North Inv , Ltd.,* 678 F.Supp. 445, 448 (D.Del.1988). In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out." Restatement (Second) of Torts § 544 (1977). Applying these standards to SFC's Complaint, the Court concludes that SFC has adequately pled justifiable reliance in order to survive dismissal.

Royal directs the Court to *Debakey Corp. v. Raytheon Service Co .,* 2000 WL 1273317 (Del. Ch. Aug. 25, 2000), for support of its contention that SFC failed to adequately plead justifiable reliance. [FN5] In *Debakey,* the plaintiff sued for fraudulent inducement because of an oral promise by defendants that they would provide funding in excess of $2 million to the parties' joint venture. 2000 WL 1273317, at *22. A subsequent written contract, however, stated that the defendants had the right to unilaterally decide not to extend funding once the $2 million limit was reached. *Id.* Once the $2 million limit was reached, the defendants declined to extend the plaintiffs additional funding. *Id.*

>    FN5. Royal does not contest that the statements at issue are material.

Following a bench trial, the *Debakey* court concluded that the written contract precluded the plaintiff from establishing justifiable reliance. *Id*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609329 (D.Del.)
**(Cite as: 2004 WL 609329 (D.Del.))**

Page 5

The court reasoned that reliance on the defendants' prior oral representations that they would provide funding in excess of $2 million when a subsequent express contract "unambiguously" permitted the defendants to terminate the joint venture "once the $2 million funding limit was reached" was unreasonable. *Id*

The Court concludes that *Debakey* is both factually and procedurally distinguishable from the instant case. Here, unlike *Debakey,* there is no express contract that would make SFC's reliance on Royal's oral representations unjustifiable. Further, the *Debakey* court reached its conclusions after a bench trial and post-trial briefing, clearly not subject to the liberal 12(b)(6) standard of review. When reviewing SFC's Complaint under the correct standard of review, the Court concludes that SFC has adequately pled justifiable reliance. As noted above, SFC alleges that Royal made two statements to it indicating Royal's intent to issue a new credit risk insurance policy. (D.I. 1 at ¶ 31, 33.) Further, SFC alleges that Royal made these two representations following Royal's public announcement that it was exiting the credit risk insurance business (D.I. 1 at ¶ 29), thereby justifying SFC's belief that Royal would issue one more policy despite its announcement

*5 Based on these allegations, the Court cannot conclude that SFC could prove no set of facts establishing justifiable reliance. *See Langford,* 235 F.3d at 47. Accordingly, the Court will deny Royal's Motion to Dismiss Counts I and II for failure to plead justifiable reliance.

3. *Damages*

The Court is not persuaded by Royal's contention that SFC has failed to plead damages as a result of Royal's allegedly fraudulent and negligent misrepresentations. In paragraph 36, SFC alleges that it borrowed over $12 million from Royal "that provided no benefit to SFC " (D.I.1.) Further, in paragraph 45, SFC alleges that based on Royal's misrepresentations, Royal continued to receive pecuniary benefits that it was not entitled to from SFC's business. *Id.* Based on these allegations, the Court concludes that SFC has pled damages that are a consequence of Royal's alleged misrepresentations and false statements.

4. *Duty To Speak*

Royal also contends that SFC has failed to state a claim of fraud or negligent misrepresentation because, to the extent SFC bases Counts I and II on material omissions by Royal, SFC has not alleged that Royal had a duty to speak. In Delaware, a duty to speak may arise from circumstances other than a fiduciary or confidential relationship. *See Matthews Office Designs, Inc v. Taub Inv*, 647 A.2d 382 (Del.1993) (relying on the Restatement (Second) of Torts § 551(2) (1976) for the circumstances in which a duty to speak may arise) In relevant part, the Restatement (Second) of Torts § 551 provides that a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction "if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id*, *see also Mentis v. Delaware Am. Life Ins. Co.,* 1999 WL 744430 (Del.Super. July 28, 1999) (holding that a duty to speak may arise from a pre-existing relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression) (citations omitted).

Royal moves to dismiss Counts I and II only on the basis that SFC has not alleged the existence of a confidential or fiduciary relationship between the parties. Therefore, the Court will deny Royal's Motion because Royal has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty to speak.

B. *Count III, Breach Of The Duty Of Good Faith And Fair Dealing*

Royal contends that Count III of SFC's Complaint, breach of the duty of good faith and fair dealing, should be dismissed because there was no contract by which a covenant of good faith and fair dealing may be implied. In response, SFC contends that it has alleged facts sufficient to support its breach of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609329 (D.Del.)
(Cite as: 2004 WL 609329 (D.Del.))

Page 6

the duty of good faith and fair dealing claim because the case Royal relies upon implied a covenant of good faith and fair dealing before the execution of any written contract. Further, SFC contends that part of its good faith and fair dealing claim involves actions that took place after the Notes were executed.

*6 Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. *Katz v. Oak Indus. Inc*, 508 A.2d 873, 880 (Del. Ch.1986) (citing Restatement (Second) of Contracts, § 205 (1981)). A party must "act reasonably to fulfill the intent of the parties to the agreement." *Gloucester Holding Corp v U.S. Tape & Sticky Prod., LLC*, 832 A.2d 116, 128 (Del. Ch.2003) (quoting *Kelly v. McKesson HBOC, Inc*, 2002 WL 88939 at * 10 (Del.Super.Jan. 16, 2002)). Applying these principles to the allegations in SFC's Complaint, the Court will grant Royal's Motion to Dismiss SFC's claim for breach of the duty of good faith and fair dealing.

SFC contends that it has sufficiently alleged a claim for breach of the duty of good faith and fair dealing because it alleged in its Complaint that "at the time the parties negotiated the Notes, SFC reasonably expected Royal to issue the new policy based on Royal's misrepresentations and omissions." (D.I. 14 at 21.) SFC alleges that its reasonable expectations are based upon Royal's representations to SFC's CEO that Royal would consider providing additional credit risk insurance for another securitization if SFC executed the Notes that Royal would use to make forbearance payments to Wells Fargo. (D.I. 1 at ¶ 33.) SFC further alleges that it executed the Notes requested by Royal, but that Royal never fulfilled its promise to issue a new credit risk insurance policy. *Id.* at ¶ 59-60.

The Court concludes that SFC's allegations are complaints about Royal's bad faith in bargaining or negotiation, and therefore, do not fall within the scope of the duty of good faith and fair dealing in contracts. *See* Restatement (Second) of Contracts § 205 comment (c) (1981). "The duty of good faith is ... not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations." E. Allen Farnsworth, 2 *Farnsworth on Contracts* § 7.17 (2d ed.2001). SFC's allegations involve contract invalidating claims dealing with fraudulent inducement or fraud, not breach of the duty of good faith and fair dealing. Accordingly, the Court will grant Royal's Motion to Dismiss Count III of SFC's Complaint for failure to state a claim upon which relief may be granted on grounds of breach of the duty of good faith and fair dealing.

*C. Count IV. Unjust Enrichment*

Royal contends that Count IV, unjust enrichment, should be dismissed because payment of the loan proceeds was carried out as contemplated by the parties. Further, Royal contends that because unjust enrichment is a quasi-contract claim, it is not available when, as here, an express contract covers the same subject matter. SFC responds that it has sufficiently pled an action for unjust enrichment because actions for unjust enrichment are permitted when the validity of a contract is challenged, as in the instant case.

*7 "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del.Super.2001) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del.1988)). " 'The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." ' *Id.* (quoting *Jackson Nat'l Life Ins. Co v. Kennedy*, 741 A.2d 377, 393 (Del. Ch.1993). Applying these principles to the facts alleged in SFC's Complaint, the Court concludes that SFC has adequately alleged facts in support of its unjust enrichment claim to survive Royal's Motion to Dismiss.

The Court is not persuaded by Royal's contention that SFC may not maintain a claim for unjust enrichment because the parties executed documents, i.e. the Notes, providing for payment to Wells Fargo. Although the Court agrees with the general contract principle cited by Royal, in this case, SFC alleges that the Notes should be rescinded because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609329 (D.Del.)
**(Cite as: 2004 WL 609329 (D.Del.))**

Page 7

of fraudulent statements and omissions made by Royal. Therefore, accepting SFC's factual allegations, the Court concludes that SFC's unjust enrichment claim must survive the instant motion because if the Notes are rescinded due to fraudulent conduct or omissions, there is no valid contract that would preclude SFC's unjust enrichment theory.

Further, the Court rejects Royal's assertion that SFC has failed to allege that Royal received any unjust retention of a benefit. Royal contends that because the parties specifically contemplated that the proceeds from the Notes would be paid to Wells Fargo, SFC cannot now complain of any unfairness that may have resulted from that agreement. SFC is not, however, merely complaining that Wells Fargo received the benefit of the proceeds of the Notes; instead, SFC asserts that Royal was unjustly enriched because Royal induced SFC to act by making promises Royal never intended to keep. Accordingly, the Court will deny Royal's Motion to Dismiss Count IV.

D  *Counts V Rescission, and VI, Declaratory Judgment*

Royal contends that Counts V, rescission, and VI, declaratory judgment, should be dismissed because these claims are based upon previous paragraphs in the Complaint that are defective for reasons it stated with respect to Counts I-IV. The Court disagrees

Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. *Norton v. Poplos,* 443 A.2d 1, 4 (Del.1982). The elements of fraudulent inducement are 1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result. *Lord v. Souder,* 748 A.2d 393, 402 (Del.2000) (citing *Stephenson,* 462 A.2d at 1074.

*8 The Court concludes that SFC has alleged facts sufficient to support its claim for rescission due to fraudulent inducement. In its Complaint, SFC alleges that Royal knew that representations and omissions it made to SFC were false, that it acted reasonably in reliance on these representations, and that it was injured. (D.I. 1 at ¶ 30-36.) These allegations support a claim for rescission due to fraudulent inducement. [FN6]

> FN6. As noted above, the Court has concluded that SFC's Complaint, for the purposes of the Rule 12(b)(6) Motion, alleges a material fact, justifiable reliance, and the damages elements of an action for fraud.

The Court also concludes that SFC has alleged facts sufficient to support its declaratory judgment claim. Count VI of SFC's Complaint asserts that SFC is entitled to a declaratory judgment that the Notes are null and void because it was fraudulently induced into their execution. As the Court has concluded, SFC has alleged facts adequate to support a claim for fraudulent inducement, and therefore, the Court will deny Royal's Motion to Dismiss Count VI of SFC's Complaint.

CONCLUSION

For the reasons discussed, the Court concludes that Counts I and II of SFC's Complaint do not satisfy Rule 9(b)'s pleading requirements, and therefore, must be dismissed. Further, the Court concludes that Count III of SFC's Complaint must be dismissed pursuant to Rule 12(b)(6). The Court also concludes that Counts I, II, and IV-VI state a claim for which relief may be granted.

An Order consistent with this Opinion will be entered.

*ORDER*

At Wilmington, this 23rd day of March, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:
1) Royal Indemnity Co.'s ("Royal") Motion to Dismiss (D.I.6) Counts I and II of Student Finance Corporation's ("SFC") Complaint pursuant to Rule 9(b) is *GRANTED;*
2) Royal's Motion to Dismiss (D.I.6), pursuant to Rule 12(b)(6), with respect to:
a) Count III of SFC's Complaint is *GRANTED;*
b) Counts I, II, IV-VI of SFC's Complaint is *DENIED.*
3) SFC shall file an Amended Complaint within

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 609329 (D.Del.)  
**(Cite as: 2004 WL 609329 (D.Del.))**

Page 8

twenty (20) days of this Order.

2004 WL 609329 (D.Del )

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV00507  (Docket)  
                              (May. 23, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.