1

```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
ROBERT E. BROWN and              :
SHIRLEY H. BROWN,
                                 :
              Plaintiffs
                                 :    C.A. No. 04-6 17 SLR
      vs.
                                 :
INTERBAY FUNDING, LLC, and
LEGRECA & QUINN REAL             :
ESTATE SERVICES, INC.,
                                 :
              Defendant
```

        Deposition of ROBERT E. BROWN taken pursuant to notice at the law offices of Reger & Rizzo, 1001 N. Jefferson Street, Suite 202, Wilmington, Delaware, beginning at 2:20 p.m., on Thursday, March 17, 2005, before Allen S. Blank, Registered Merit Reporter and Notary Public.

APPEARANCES:
      CAROL J. ANTOFF, ESQUIRE
      REGER & RIZZO
      1001 N. Jefferson Street
      Wilmington, DE 19801

            For - Defendant Legreca & Quinn Real
                  Estate Services
ALSO PRESENT:
      SHIRLEY H. BROWN

---

                   WILCOX & FETZER, LTD.
         1330 King Street - Wilmington, DE 19801
                       (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

COPY

1    A    Yes, ma'am.

2    Q    Have you had an appraisal expert of real
3  estate, commercial real estate appraisal expert, review
4  Legreca & Quinn's appraisal?

5    A    No.

6    Q    Have you obtained an independent appraisal
7  of the subject property conducted by a certified
8  commercial real estate appraiser?

9    A    Prior to applying to Interbay, there was an
10 appraisal done by the broker, which we paid for.  So I
11 guess that answer would be yes.

12   Q    Was that the one that was taken by -- that
13 was done by Steven Ulrich?

14        MRS. BROWN:  Yes.  Both.

15        THE WITNESS:  Northern Bay.  Something like
16 that.

17        MS. ANTOFF:  We have a problem.  I
18 understand that you can help with his answers.  But it
19 is his deposition and it has to be -- the answers with
20 him.  You're really not allowed to speak during his
21 deposition.  If you want, when he is done, if you feel
22 that there was something that you wanted to add to it,
23 you know, we can give you that at that time.

24        MRS. BROWN:  No, I don't have any problem



Robert E. Brown

8

```
1      Q     Okay.
2      A     But if I don't remember the name, I mean, my
3   wife was just merely stating something, you know.
4            But, anyway, we'll proceed.  We will conform
5   to what you're saying.
6      Q     Okay.
7            Do you have any documents or other evidence
8   that support your contention that Legreca & Quinn's
9   methods of appraising the subject property were
10  erroneous?
11     A     The only ones that I have submitted is the
12  production of documents and affidavits that I filed
13  with my motions and the complaint.
14     Q     Okay.  So everything that you have has been
15  submitted?
16     A     Yes.
17     Q     Do you have any expert report, a report that
18  was prepared by a real estate appraisal expert, which
19  indicates that the subject property should not be
20  appraised as a building located on 1,875 square feet,
21  which is situated on total land property of 6.970
22  square feet?
23     A     Excuse me.  You said do I have an expert --
24     Q     Report.
```



WILCOX & FETZER LTD.
Registered Professional Reporters

1    A    Report saying that?

2    Q    That says that that's not the way the
3  property should be appraised?

4    A    Yes. And my question. Let me elaborate on
5  that. Is that under the Uniform Code Of Appraisals of
6  the Appraisal Institute, their guidelines state that
7  appraisals are done by three standard methods. Okay.
8  It's income, market value and comparables as a standard
9  method of appraisal. A complete appraisal means when
10 dealing in real estate, according to the FHA and the
11 ECOA guidelines, CFR guidelines state, I think it is
12 204.13, something like that, of the CFR, states that
13 any properties or homes or buildings being used for
14 collateral must go through those particular standards
15 of evaluation.

16    Q    My question was, do you have a report
17 prepared by an expert?

18    A    No, I don't. Not at this time.

19    Q    Have you consulted any real estate appraisal
20 expert to give your opinion regarding a complete
21 appraisal?

22    A    Not at this time.

23    Q    Do you have a report prepared by a real
24 estate appraisal expert which indicates the subject

1  property shouldn't be appraised by the sales comparison
2  approach?
3      A    No, I do not.
4      Q    Do you have a report prepared by an
5  appraisal that indicates that the subject property
6  should not be appraised by the income capitalization
7  approach?
8      A    Do I have -- ask the question again.
9      Q    Okay.  Do you have any report prepared by a
10 real estate appraisal expert which would indicate that
11 the subject property should not be appraised by the
12 income capitalization approach?
13     A    No, I do not.
14     Q    It is my understanding from your earlier
15 question that you do not have an expert real estate
16 appraiser who has prepared a report for you at all, is
17 that correct?
18     A    I told you before that the broker who we
19 first applied through had it appraised.  Now, this term
20 expert, I don't quite understand what you mean by
21 expert.  I mean we had licensed appraisers to evaluate
22 the property, yes, prior to Legreca & Quinn.
23     Q    Did you have more than one licensed
24 appraiser to that property?

1   know, this is all in code and it is right in the letter
2   of engagement.
3           And then it goes on to say that no one is
4   supposed to see this letter or know anything about this
5   information that we are talking about.
6           And so I'm saying, this is a letter here.
7   In fact, it states that. And I can read it verbatim,
8   if you want.
9   BY MS. ANTOFF:
10      Q    That's okay. It is already in the record.
11           Do you have any evidence that Legreca &
12  Quinn has appraised properties that are similar to the
13  subject property but have used different methods?
14      A    You mean other properties?
15      Q    Um-hmm, other properties.
16      A    For other people?
17      Q    For other people.
18      A    No, that is not my concern or -- yeah. But,
19  again, I can say they did on me. They did on me.
20      Q    My understanding from your answers to the
21  interrogatories is that you intended to join the
22  building at 2625 Market Street, of the subject
23  property, with the building next-door at 2627 Market
24  Street to create an eat-in restaurant; is that correct

1  successful business.
2      Q    Do you have any documents or --
3      A    Any what?
4      Q    Any documents or other kind of evidence that
5  support your contention that Interbay engaged in
6  fraudulent misrepresentations?
7      A    The ones that I have submitted to you that
8  are a part of the Rule 7 of the Appraisal Institutes,
9  which are part of the record, those documents are
10 there.  The letter of engagement that we relied on.
11 Their letter of acceptance of the engagement letter are
12 the ones that we rely upon and the appraisal itself.
13 The exhibit page -- I forget the page of the
14 original -- I think it's page 18 of the original
15 appraisal where they had to graft on there where they
16 were supposed to have made some allowances for the 2617
17 and 2619, referring to them as utilities, was a stark
18 violation of the Rule 7 article or rules of the
19 Appraisal Institute.
20     Q    Okay.  Have you consulted any licensed
21 appraisal expert that informed you of violations?
22     A    Have I consulted?  No.  But I have called
23 and talked to the Appraisal Institute and I wanted
24 to -- we were considering subpoenaing them.  I

```
1   State of Delaware              :

2   County of New Castle           :

3

4                  CERTIFICATE OF REPORTER

5           I, Allen S. Blank, Registered Merit
    Reporter, do hereby certify that there came before me
6   on the 17th day of March, 2005, the deponent herein,
    ROBERT E. BROWN, who was duly sworn by me and
7   thereafter examined by counsel for the respective
    parties; that the questions asked of said deponent and
8   the answers given were taken down by me in Stenotype
    notes and thereafter transcribed by use of
9   computer-aided transcription and computer printer under
    my direction.
10
            I further certify that the foregoing is a
11  true and correct transcript of the testimony given at
    said examination of said witness.
12
            I further certify that I am not counsel,
13  attorney, or relative of either party, or otherwise
    interested in the event of this suit.
14
```



```
17              Allen S. Blank, RMR

18              Certification No. 103-RPR

19              (Expires January 31, 2008)

20

21

22

    DATED:  March 22, 2005
23

24
```

W&F
WILCOX & FETZER LTD.
Registered Professional Reporters