**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT DELAWARE**

ROBERT E.BROWN and                )
SHIRLEY H. BROWN,                 )
                                  )
              Plaintiffs,         )
                                  )
          v.                      )    C.A. No. 04-6 17 SLR
INTERBAY FUNDING, LLC, and        )
LEGRECA & QUINN REAL ESTATE       )
SERVICES, INC.,                   )
                                  )
              Defendants.         )

## PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT PURSUANT

## TO FRCP RULE 56(c).

Comes now, Robert E. and Shirley H Brown, Plaintiffs in the above captioned

case and moves this Honorable Court for Motion for Summary Judgment pursuant to

Federal Rules of Civil Procedure Rule 56 (c) against Defendant Interbay Funding

LLC, and Legreca and Quinn Real Estate Services Inc, for the following reasons:

### BACKGROUND

Robert E. and Shirley H. Brown, made application through Interbay Funding

LLC. Mortgage company on or around March 12th – 14th, 2004. The Browns were

approved for a mortgage loan by Interbay Mortgage Company (through Ms. Janet

Madric of the Sunset Mortgage Company, located at 2062 New Castle Ave. Suite E.

New Castle, Delaware 19720). The Browns were approved for a loan with the terms

of 80% financing, 20% down payment , 7-8% interest rate, 15-20 year payout. The

Browns had an "A" credit rating, a letter from their Bank (WSFS) of proof of the

20% down payment and settlement costs in their account.

## NATURE OF THE PRECEEDINGS

On the 8th day of November 2004 Plaintiffs Robert E. and Shirley H. Brown and the Defendants Interbay Funding LLC and Legreca andQuinn, were placed under United States District Court Orders by Chief Judge Susan L. Robinson of 1. Joinder of other Parties and Amendment of Pleadings, 2, Discovery, 3. Application by Motion, Summary Judgment Motions and Briefing Schedule.

Discovery was completed on or about March 7th , then extended to April 7th 2005 by request of Defendant Legreca and Quinn Real Estate Services Inc.

At this time we are in the period for Summary Judgment which will end on April 7th 2005.

## TABLE OF CONTENTS

Application Cover:                                                    pages.

Table of Contents:_____     i – ii

**NATURE OF THE PROCEEDINGS**                              **iii**

**THE SUBJECT PROPERTIES**                                    **2-3**

**THE DISCOVERY OF USPAP, FHA, ECOA REGULATIONS**      **2**

**FACTS**                                                          **2**

**UNDISPUTED FACTS**                                          **3**

**RECORD, AFFIDAVITS,  INTERROGATORIES,**

**REGULATORYVIOLATIONS**                                    **4**


**DISCRIMINATION AND BIAS**                                 **5**

### LAWS

FRCP Rule  7                                                  5

12 CFR Part §34.46                                            5

ECOA 15 USC § 1691                                           5

FHA,42 USC § 3605 (a)                                        5

### USPAP AND FIERRA

Ethics Rule SR 1.2(f)                                        5

Departure Rules 1-2(e)                                       5

Competency Rule 12 CFR 34.46 -(See U.S.Code).               5

SR 1-4(a)                                                    5

SR 2-2(a) or (b)(xi)                                         5

FRCP Rule 7                                                  5

### CASE CITINGS

**ABB Automation v. Schlumberger Res. Mgmt. Servs 254 Supp. 2d. 479: 2003**     **5**

**Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S 574.**            **6**

### SUPPORTING  DOCUMENTS

<u>EXHIBITS:</u>

**UNITED DISTRICT COURT OF THE STATE OF DELAWARE**

**(SLR- Scheduling & Memorandum Orders of November 8,.2004)__ A**

**INTERBAY FUNDING LLC, (Engagement Letter )_____B**

**INTERBAY FUNDING LLC (Appraisal Requirement Check list )__C**

**LEGRECA AND QUINN R. E. S Inc. (Acceptance Letter )**

**LEGRECA AND QUINNS  _____D**

**(Affidavits of M. Lequinn &Responses to Interrogatories)  _____E**

## THE SUBJECT PROPERTIES

The properties were listed by REMAX – METROSTAR Real Estate Company agent Duvall Watson.

The Browns qualified for a mortgage on the properties subject to the appraisal, which they felt would come in at around the $200,000.00 range, based on a previous appraisal. The Browns were required to pay to (Interbay) the sum of $2,500.00 for the Appraisal. Interbay Funding LLC, engaged the services of Legreca and Quinn Real Estate Services Inc. to do a complete Commercial Appraisal on the subject properties 2617 – 2619 - 2625 Market Street .The appraisal by Legreca and Quinn Real Estate services Inc. came back much lower the anticipated a mere $140,000.00, and the Browns challenged the appraisal. Interbay told the Browns that they would have Legreca and Quinn go back and reappraise the subject properties, but never did.

## PLAINTIFFS RECEIPT OF APPRAISAL

When the Browns finally got a copy of the Complete Commercial Appraisal prepared by Legreca and Quinn, they felt the appraisal lacked credibility due to the many omissions and errors throughout the entire document. After many phone calls and broken promises to re-appraise, the contract to purchase the subject properties expired due to time. The Browns started legal action against Interbay Funding LLC and Legreca and Quinn Real Estate Services Inc.

## THE LAW SUIT

After some ramblings through the legal systems' process and procedures, (particularly the Discovery Process) conferring with consultant companies, (the Appraisal Institute, Realtors, Investors, Insurance Brokers, and extensive research on

the subject of appraisals, and regulatory agencies ( USPAP, and FIERRA), THE
EXAMINATION OF THE APRAISAL, Engagement letter from Interbay Funding
LLC and Legreca and Quinn Real Estate Service Inc. and letter of acceptance it
becomes clear Interbay and Legeca and Quinn engaged in a conspiracy to defraud the
Browns by and through an erroneous Appraisal Report prepared by Legreca and
Quinn at the request of Interbay Funding LLC.

### THE DISCOVERY OF USPAP, FHA, ECOA REGULATIONS

During the Discovery Process of Litigation, Plaintiffs have attained proof that
Legreca and Quinn have violated USPAP regulations in the preparation of an
erroneous Appraisal. Plaintiffs have also discovered that Interbay, has violated FHA
and ECOA regulations.

Plaintiffs (Robert E. and Shirley H. Brown) reasons for this complaint against
Legreca and Quinn Real Estate Services Inc, alleges violations of USPAP, FIERRA
and SUPPLEMENTAL STANDARD RULES.

### FACTS

On March 30, 2004, Legreca and Quinn prepared an erroneous Commercial
Appraisal for Interbay Funding LLC involving a Federally regulated transaction.

On March 28, 2005, Legreca and Quinn responded to Interrogatories posed to
them by the Plaintiffs. Legreca and Quinn were under Court Order of Federal District
Court Judge Susan L. Robinson to address the questions posed to them in reference to
the process of the Commercial Appraisal of the subject properties 2617 – 2619 –
2625- Market Street.

## UNDISPUTED FACTS

As a matter of due course, the litigation involving, Robert E. and Shirley H. Brown v. Interbay Funding LLC and Legreca and Quinn Real Estate Services Inc. Case No. 4 - 617 - SLR, was placed under a Federal Court Order by Chief Judge Susan L. Robinson, of the UNITED STATES DISTRICT COURT OF THE STATE OF DELAWARE. The Court Order directed the parties to begin the Discovery Process to develop a more factual record of the merits of the case. See Exhibits((A -1 of 9 Pages) Order of Chief Judge Susan L. Robinson of the U.S. District Court of Delaware.)

Robert and Shirley Brown, have developed a more factual record of the case which support their allegations that Interbay Funding, LLC and Legreca and Quinn Real Estate Services Inc. did, in fact, conspire, to defraud and discriminate against them.

The Browns' present at this time the following set of facts of which there is no dispute:

1. On March 24, 2004 Interbay Funding LLC, did engage the services of Robert C. Legreca, of Legreca and Quinn Real Estate Services Inc, to perform an assignment of a Commercial Appraisal of the subject properties located at 2617 - 2619 - 2625 Market Street, in Wilmington Delaware. The facts are, that Robert C. Legreca is a member of the Appraisal Institute who held the rating of S.RA. which is a designation of the Appraisal Institute. This designation only allows him to perform residential appraisals. See Exhibits ((B - 1 0f 3 pages) = Engagement Letter) and Exhibits (( C )- 1 of 2 pages) = Interbay Funding LLC, Requirement Check List Commercial Property) and Exhibit (( D ) = Legreca and Quinns Letter of Acceptance),"According to Richard Hagar, SRA of the" (Appraisal Institute, an S.R.A's primary focus is on residential appraisals).

### §12 CFR PART 34.46

### 34.46 Professional association membership; competency.§

(b) Competency. All staff and fee appraisers performing appraisals in connection with federally related transactions must be State certified or licensed, as appropriate. However, a State certified or licensed appraiser may not be considered competent solely by virtue

4

of being certified or licensed. Any determination of competency shall be based upon the individual's experience and educational background as they relate to the particular appraisal assignment for which he or she is being considered.

We have at this time, a sworn Affidavit of Michael Legreca of Legreca and Quinn answers to the Interrogatories posed as to the Commercial Appraisal process that was used by Robert C. Legreca, SRA designated. The answers appear to be written by Michael Legreca.

Our assessment of the answers support and confirm that USPAP , FIERRA, and the SUPPLEMENTAL STANDARD RULES have been violated. Particularly USPAP Rules [Ethics Rule SR 1.2(f)] [(Competency Rule 12 CFR 34.46 ect)] [ and [(Departure Rules 1-2(e) [SR 1-4(a)] [SR 2-2(a) or (b)(xi)].

### RECORD, AFFIDAVITS, INTERROGATORIES, REGULATORY VIOLATIONS

Legreca and Quinns' answers to the Interrogatories substantiate all of the violations cited in the previous paragraph. Judge Robinsons' citing of **Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S 574,** refers to the elements required to support a finding of Summary Judgment. Defendants answer to interrogatory #12 avers the value of lots 2617 and 2619 Market Street is unknown and the Cost Approach of valuation, in violation of USPAP was not used. Additionally, the method of departure was not applied.

We believe our motion for Summary Judgment has met all of the criterion in that the record, affidavits, answers  to the Interrogatories and the evidence that Robert C. Legreca, holds a SRA designation (this designation only permits appraisal of residential properties). Robert C. Legreca prepared the appraisal used by Interbay in violation of regulations of USPAP and FIERRA, as he was not credentialed. In addition, we have established the fact that Interbay Funding LLCs' use of the Complete Commercial Appraisal prepared by Robert C. Legreca (SRA designate) violates regulations of FHA,42 USC § 3605 (a), ECOA 15 USC § 1691, and 12 CFR Part §34.46 in total support our Motion for Summary Judgment.

Interbay Funding LLC defaulted on its answer to the original complaint in that they did not answer until 4 months after they were served with the original complaint in

violation of FRCP Rule 7. **ABB Automation v. Schlumberger Res. Mgmt. Servs 254 Supp. 2d. 479: 2003**

## DISCRIMINATION AND BIAS

Interbay Funding LLC, engaged in discrimination against the Browns, through the use of an erroneous Commercial Appraisal prepared by (Robert C. Legreca, SRA) and its co-conspirator Legerca and Quinns Real Estate Services Inc. by employing the use of a Commercial Appraisal prepared by an appraiser who did not have the credentials required under the Federal Code 12 CFR Part 34.46 (Competency Rule).

In ultilzing this appraisal Interbay violated 15 USC § 1691, (a)42 USC § 3605, (a) and in violation of 12 CFR § 528 ,(2a).

Plaintiffs contend that all of these facts are undisputed and are supported by the Record, Affidavits, and the Transcript.

**THEREFORE;** Plaintiffs, request this Honorable Court to enter Summary Judgment against Interbay Funding LLC and Legreca and Quinn Real Estate Services Inc. severally and jointly for fraud, conspiracy and discrimination. We ,the Plaintiffs have proven by the exhibits, facts , Affidavits, Interrogatories, supported by the Record that Summary Judgment should be granted to us as a matter of law.

**WE PRAY,** That this Honorable Court will apply the laws that  guarantee our rights under the Delaware State Constitution and the Constitution of the United States and the laws of the State of Delaware.

Robert E. Brown, Pro Se.

Shirley H. Brown, h/w
1024 Walnut Street
Wilmington, DE. 19801
(302) 652-9959

# IN THE UNITED STATES DISTRICT COUT FOR THE DISTRICT OF DELAWARE

Robert E. Brown and                         :

Shirley H. Brown h/w                        :

              Plaintiffs,          :

        v.                         :        Civil Action No. 04- 617- SLR

                         :

Interbay Funding LLC, and                   :

Legreca & Quinn Real Estate                 :

 Services Inc.                              :

            Defendants          :

## NOTICE OF SERVICE

## PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT PURSUANT

## TO FRCP RULE 56(c).

      This is to certify that on this 5th day of APRIL, 2005, copies of   "Plaintiffs

Motion for Summary Judgement Pursuant to Federal Rule of Civil Procedure Rule 56,

were served on the following attorneys listed below:

David Souder                               Carol J. Antoff, Esquire
Sandra Brickel                             Delaware  State Bar I.D. No. 3601
1300 19th Street N.W                       1001 Jefferson Plaza, Suite 202
5th Floor                                  Wilmington, DE 19801
Washington, D.C. 20036-1609                (302) 652-3611
(202) 628-2000                             Attorney for Legreca & Quinn
Attorney's for Interbay

David Finger, Esq.
Commerce Center
1200 Orange Street
Wilmington, DE 18701                        Robert E. Brown, Pro Se.
Attorney for Interbay.

                                   Shirley H. Brown, h/w
                                   1024 Walnut Street
                                   Wilmington, DE. 19801
                                   (302) 652- 9959

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT E. BROWN and            )
SHIRLEY H. BROWN,              )
                               )
        Plaintiffs,            )
                               )
    v.                         ) Civ. No. 04-617-SLR
                               )
INTERBAY FUNDING, LLC and      )
LEGRECA & QUINN REAL ESTATE    )
SERVICES, INC.,                )
                               )
        Defendants.            )

## O R D E R

At Wilmington this 21st day of March, 2005, having reviewed plaintiffs' motions to compel and defendants' responses thereto;

IT IS ORDERED that said motions (D.I. 61, 63, 70) are granted in part and denied in part, as follows:

1.  The motions are denied with respect to defendant Interbay Funding, LLC, as I find this defendant's responses to plaintiffs' interrogatories to be appropriate and sufficient.

2.  The motions are granted with respect to defendant Legreca & Quinn Real Estate Services, Inc. ("Legreca & Quinn"), who made no apparent attempt to respond in any substantive way to plaintiffs' interrogatories.  Therefore, **on or before April 5, 2005,** defendant Legreca & Quinn shall respond in a substantive

fashion to interrogatories numbered 9, 10, 11, 12, 13, 14, 15, 17, 18, 22 and 23, all of which refer to the appraisal process. Even if the interrogatories are inartfully crafted, Legreca & Quinn is directed to treat such as contention interrogatories and must explain in response its appraisal analysis, keeping in mind the topic of each interrogatory.

3.  Defendants shall not take plaintiffs' depositions until the above discovery is submitted.

<img>signature</img>

United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT E. BROWN and      )
SHIRLEY H. BROWN,        )
                         )
         Plaintiffs,     )
                         )  Civ. No. 04-617-SLR
     v.                  )
                         )
INTERBAY FUNDING, LLC, and )
LAGRECA & QUINN REAL ESTATE )
SERVICES, INC.,          )
                         )
         Defendants.     )

---

Robert E. Brown and Shirley H. Brown, Wilmington, Delaware.  <u>Pro Se</u>.

David L. Finger, Esquire of Finger & Slanina, Wilmington, Delaware.  Counsel for Defendant Interbay Funding, LLC.  Of Counsel:  David M. Souders and Sandra L. Brickel of Weiner Brodsky Sidman Kider, Washington, D.C.

Carol J. Antoff, Esquire of Reger & Rizzo, Wilmington, Delaware. Counsel for Defendant Lagreca & Quinn Real Estate Services, Inc.

---

**MEMORANDUM OPINION**

Dated: November 8 , 2004
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On June 28, 2004, plaintiffs Robert E. Brown and Shirley H. Brown filed this action against defendants Interbay Funding, LLC ("Interbay") and Lagreca & Quinn Real Estate Services ("Lagreca & Quinn") alleging discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § § 1691 et seq., and the Fair Housing Act, 42 U.S.C. § § 3601 et seq.; negligence; fraud; violations of the Federal Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § § 3331 et seq.; and violations of the Uniform Appraisal Standards of Professional Appraisal Practice. (D.I. 1) Pending before the court are plaintiffs' motion for sanctions under Federal Rule of Civil Procedure 11 (D.I. 22) and Interbay's motion to dismiss. (D.I. 8) For the following reasons, the court denies plaintiffs motion for sanctions and grants Interbay's motion to dismiss.

## II.   BACKGROUND

On March 11, 2004, plaintiffs contracted to purchase three parcels of property located at 2617-2619-2625 Market Street, Wilmington, Delaware ("property"). (D.I. 1) One parcel contains a two-story, semi-detached commercial building; the other two are paved parking lots. (D.I. 11 at Ex. A) The building is a dwelling, built in 1915, that has been converted into a beauty salon. Id. Plaintiffs intended to use the commercial property to expand their restaurant business. (D.I. 9 at 4)

Plaintiffs applied for a mortgage loan through Janet Madrick, a broker for Sunset Mortgage Company. Id. A loan application was then submitted to Interbay, the mortgage lender. Id. Interbay approved the loan application subject to an appraisal of the property, to assure that there was sufficient collateral for the loan. Id. Interbay contracted with Lagreca & Quinn to perform the appraisal. Id. at Ex. A. The agreement required plaintiffs to pay $2,500 for the appraisal.

Based on other properties within the same zip code, plaintiffs expected the property to be valued "around the $200,000 range." (D.I. 1 at 3) Lagreca & Quinn valued the property at $140,000. (D.I. 9 at Ex. A) After the appraisal, Interbay adjusted plaintiffs' mortgage, agreeing to finance 65% of the purchase price instead of 80% and requiring plaintiffs to make a down payment of 35% of the purchase price instead of 20%. (D.I. 9 at 5)

After finding out that the terms of the mortgage had changed, plaintiffs had their bank rescind the $2,500 that had been transferred to Lagreca & Quinn because they disputed the accuracy of the appraisal.[1] (D.I. 1 at 4) Plaintiffs alleged that Lagreca & Quinn only appraised one of the lots and compared

---

[1]There is a dispute regarding when plaintiffs actually received a copy of the appraisal. Plaintiffs allege Interbay refused to provide them a copy upon request, but Interbay insists they received one.

2

the property to those outside the appropriate area. (D.I. 11 at 8, D.I. 9 at 5) Initially, Interbay agreed to have all three parcels reappraised based on plaintiffs' arguments, but later informed plaintiffs that the original appraisal had taken the two paved lots into consideration. The appraisal considered paved parking lots as utility added to the parcel with the commercial building. (D.I. 9, Ex. A at 18) Because none of the lots used for comparison had on-site parking, Lagreca & Quinn assigned a higher value to the parcel with the commercial building, as opposed to valuing the two paved lots independently.[2] Id.

## III. PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

Federal Rule of Civil Procedure 11 allows a court to sanction a party or attorneys under limited circumstances. A court can award sanctions if a party or attorney has presented a motion for an "improper purpose," the claims or defenses put forth in a motion are frivolous, the claims in a motion are not likely to be supported by the evidence after investigation, or a party wrongfully denies a factual allegation. See Fed. R. Civ. P. 11(b) (2004).

Plaintiffs allege defendants wrongfully denied factual allegations in their answer because defendants denied discriminating against them. (D.I. 22 at 5) A finding that

---

[2]The result was a value based on 1,875 square feet, the size of the parcel with the building, as opposed to 6,980 square feet, the size of all three parcels.

defendants wrongfully denied plaintiffs' allegations in their answer would require the court to first find that defendants discriminated against plaintiffs.  Thus far, defendants have alleged a sufficient factual basis for denying plaintiffs' allegations; therefore, defendants did not necessarily misrepresent the issue to the court when they denied plaintiffs' allegations.

Plaintiffs also allege defendants misrepresented a document to this court because they failed to include a page of the document.  (D.I. 22 at 2)  The allegedly omitted page is a page of a fax sent by Interbay to plaintiffs to explain the appraisal.  (Id. at Ex. 2)  It is not a page of the appraisal.  There is no evidence of bad faith on the part of the defendants.  Therefore, the court declines to sanction defendants or their attorneys for the alleged omission.

**IV.  INTERBAY'S MOTION TO DISMISS**

Interbay claims that plaintiffs failed to assert a cause of action against it because plaintiffs do not allege that Interbay performed the discriminatory appraisal.  Plaintiffs argue that Interbay is responsible for Lagreca & Quinn's discrimination based on principles of agency.

4

A.    **Standard of Review**

Because the parties have referred to matters outside the pleadings, Interbay's motion to dismiss shall be treated as a motion for summary judgment.[3]  See Fed. R. Civ. P. 12(b)(6).  A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and

---

[3]Interbay included both a copy of the appraisal and its engagement letter to Lagreca & Quinn among its papers.

5

all reasonable inferences therefrom in the light most favorable
to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995).  The mere existence of some
evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for
the nonmoving party on that issue.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party
fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law.  See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B.    Interbay's Reliance on the Appraisal**

The ECOA prohibits discrimination by a creditor "against any
applicant, with respect to any aspect of a credit transaction . .
. based on race . . . ."  15 U.S.C. § 1691 (a).  Likewise, the
FHA provides:

> It shall be unlawful for any person or other entity
> whose business includes engaging in residential real
> estate-related transactions to discriminate against any
> person in making available such a transaction, or in
> the terms or conditions of such a transaction, because
> of race, color, religion, sex, handicap, familial
> status, or national origin.

42 U.S.C. § 3605(a).  Federal rules prohibit lenders from relying
on an appraisal that they know, or should know, is discriminatory

6

in violation of the FHA or the ECOA.  See 12 C.F.R. § 528.2a
(2004).

The court is not prepared to decide on the record presently
before it whether the appraisal was discriminatory and, if so,
whether Interbay knew or should have known that the appraisal was
discriminatory.  For example, the court has no evidence relating
to valuation, i.e., whether valuing the single parcel with the
building and the utility of on-site parking (instead of all three
parcels individually) was appropriate.  As such, the court denies
Interbay's motion for summary judgment without prejudice to renew
at the completion of discovery upon a more developed factual
record.

**C.    Interbay's Relationship with Lagreca & Quinn**

Plaintiffs claim that Interbay is liable for the
discriminatory appraisal because Lagreca & Quinn was acting as
its agent.  Agency relationships require the agreement that one
party will act on behalf of another and the "understanding that
the principal is to be in control . . . ."  See Restatement
(Second) of Agency § 1 cmt. b (1958).  "It is the element of
continuous subjection to the will of the principal which
distinguishes the . . . agency agreement from other agreements."
Id.  Without this level of control, an entity who contracts to
perform a service for another is merely an independent
contractor. See id. at § 2.

7

Interbay contracted with Lagreca & Quinn to provide an "independent appraisal" report. (D.I. 19 at Ex. 2) In the letter dated March 30, 2004, Lagreca & Quinn indicated it was submitting the appraisal on the property at issue "[i]n fulfillment of [its] agreement as outlined in the Letter of Engagement." (D.I. 11 at Ex. A) Interbay was not entitled to use the appraisal for any use other than that specified in the agreement. Id. Although the agreement placed certain requirements on the appraisal, Interbay was not in control of the process. Lagreca & Quinn used its own tools and employees to appraise the property. In addition, Interbay was not responsible for paying Lagreca & Quinn for the appraisal, as plaintiffs paid for it. The court concludes that Lagreca & Quinn was acting as an independent contractor because its conduct was not controlled by Interbay. Because there is no agency relationship, Interbay is not liable for any alleged discrimination by Lagreca & Quinn.

V.    **CONCLUSION**

Plaintiffs' motion for Rule 11 sanctions is denied. Interbay's motion to dismiss is granted in part and denied in part. Interbay's motion is granted with respect to plaintiffs' claims that it is liable for Lagreca & Quinn's appraisal because of an agency relationship. Interbay's motion is denied with respect to plaintiffs' claim that it relied on a discriminatory

appraisal in violation of 12 C.F.R. § 528.2a.  An order

consistent with this memorandum opinion shall issue.

EXHIBIT B



# INTERBAY
## FUNDING, L.L.C.

Date:    3/24/2004

C04.0055

Michael Lagreca
Lagreca & Quinn Real Estate Services, Inc.
1121 Horsham Rd.
Ambler, PA 19002

Dear Michael Lagreca,

This letter is our engagement letter for the appraisal services described
herein; please sign and return this letter to the undersigned, and include an
executed copy in your report. This letter represents the authorization of
InterBay Funding, LLC ("the client") to prepare an independent appraisal report
for the property described below.  Complete compliance, as determined by the
client, with the terms of this letter and its attachment(s) is necessary to
insure acceptance of the appraisal report and prompt payment of your invoice.
The appraiser to which this letter is addressed is expected to complete an
interior inspection and sign the report.

Borrower Name:       Shirley H. Brown
Property Address:    2617-2619-2625
City, State, Zip:    Wilmington, DE 19802
Loan or ID Number:   2040542

Fee:                 $2,900
Due Date:            4/20/2004

General Requirements:

1. Narrative appraisals are acceptable.  Forms 71-A, 71-B and UCIAR are
acceptable with authorization of client.

2. The purpose of the report is to estimate the Fee Simple Interest (unless an
existing lease is long-term and below market levels) in accordance with the
definition of market value as referenced in the most recent edition of USPAP.
An "as is" market value must be reported. When applicable, an allocation to FF
& E, business and going concern value is required.

3. Competency - The report must contain a statement as to the competency of the
appraiser.  A General Certified appraiser who is experienced with the property
type and the subject market must inspect the interior of the property.

4. Departure - The report must conform to the most recent versions of USPAP and
FIRREA and shall not invoke the departure provision without the express written
consent of the client.

5. Delivery - The Client reserves the right to reduce the fee by five percent
(5%) per day for any appraisal delivered past the due date.  The appraiser must
notify the Client, preferably in writing, at least one week before the due date
of any reasonable delays.

6. Communication - Neither the appraiser nor the appraisal firm may divulge the
opinions or conclusions or give a copy of the appraisal report to anyone other
than the client or client's designee as specified in writing.

Valuation Requirements:

Cost Approach - (if developed) Comparable land sales, location map, and adjustment grid are required. The source of cost and depreciation estimates must be disclosed. The omission of the cost approach is not considered a departure if the approach is not applicable to the property.

Sales Comparison Approach (required) - Photographs, adjustment grid (whether quantitative or qualitative), and comparable sale property location map must be included. Any adjustments applied for market conditions must be supported by market data. The comparable sales should not require substantial adjustment(s).

Income Approach (required) - Rental photographs and competitive rental location map are required, and the detail must be sufficient to allow independent review. Market data and comments are required to support estimates of vacancy, expenses and capitalization rates. See the Client's Valuation Guidelines for additional details.

Content Requirements:

1. Prior Sales: Analyze and report any sales of the subject property that have occurred within the past three years. Any recent offer, current offer or pending agreement of sale must also be reported and the appraiser must reconcile the appraised value to any such previous sale, offer or pending transaction.

2. Historical Data: All historical data (schedule of renovation costs, rent roll, operating statement, etc.) should be included in the addenda of the report.

3. Zoning: The subject's zoning must be disclosed and an explicit statement discussing the subject's conformance, or the lack thereof, must also be included.

4. Real Estate Taxes: Actual taxes and delinquent taxes must be reported. For valuation purposes, the analysis should address whether the real estate taxes would change (up or down) if the property was sold and the property should be valued accordingly (especially if the current market value significantly differs from the current assessed value).

5. Subject Photographs: Required of interior, exterior and street scenes.

6. Building Sketch: Required in some format, whether completed by the appraiser or via a blueprint. The appraiser must explicitly state the source of the size estimates (gross, rentable, etc) that are provided.

7. Marketing Time: Must be reported.

8. Extent of Inspection: the appraiser must report the areas that were included in the inspection. For apartment properties, all vacant units and at least 50 percent of the overall units must be inspected.

Client Requirements:

1. Appraisal report must comply with all requirements found in this letter and the Client's Valuation Guidelines.

2. Appraisal should not be completed until all necessary documentation (purchase agreement, leases, rent roll, operating statements, and renovation schedule) is provided that is required to support the valuation.

3. At a minimum, the Sales Comparison and Income approaches to value are required for all assignments unless the Client authorizes alternate content.

4. The appraised value should not exceed a current purchase price unless a compelling and verifiable reason is provided. Conversely, if the sales contract includes seller concessions for repairs, closing costs or financing that is atypical to the market then these amounts must be accounted for in the "As Is" value estimate.

5. The appraiser must contact the client if any of the following conditions apply:
  * Subject property consists of multiple tax parcels;
  * Value is allocated to excess or surplus land;
  * Subject property requires substantial renovation or rehabilitation (> $20,000);
  * Subject property is designed for a specific purpose and not adaptable to alternate use(s);
  * If required property information is not being provided in a timely fashion;
  * Estimated marketing time exceeds 12 months.

You may arrange for an interior inspection and obtain all pertinent information by contacting the following:

Property Contact/Phone #:     Janet Madric / 302-658-9644

Please certify one electronic copy of the report uploaded to the InterBay Funding, LLC RIMS site (Preferred Method). The report must be addressed to "InterBay Funding, LLC or its assigns".

If this is not possible, please overnight one copy of the report to each location below:

Cathy Gallagher                          Real Estate Department
InterBay Funding                         InterBay Funding
1301 Virginia Drive, Suite 403           1301 Virginia Drive, Suite 403
Fort Washington, PA 19034                Fort Washington, PA 19034

Upon receipt, sign and return this letter via facsimile to the undersigned.

For InterBay Funding

Cathy Gallagher                          Appraiser Acceptance
InterBay Funding
305-646-4565                             Date:  3/23/04
                                         Signature: Michael Goff
_____                 Printed Name: Michael A. Trapani
Cathy Gallagher

EXHIBIT C



**INTERBAY**
——— FUNDING, LLC

Page 1 of 2 — Effective Date July 1, 2003

## APPRAISAL REQUIREMENTS CHECKLIST - COMMERCIAL PROPERTIES

Instructions to the appraiser: Insert initials or page numbers, attach document to report.

Electronic transfer of reports (including exhibits and Addenda attachments) is encouraged.

Reports will be addressed to the mortgage broker, for InterBay Funding, LLC, or to a designated third party.

InterBay Funding, LLC is not responsible for payment of fees unless the appraiser is engaged by InterBay in writing.

| *A. GENERAL REQUIREMENTS* | Initials |
|---|---|
| 1. <u>Development/Report Options:</u> Complete Appraisal, Summary Report is required.  A Limited Appraisal, Summary Report may be appropriate for <u>some assignments in some lending programs</u>, but this option must be approved in writing by an InterBay Real Estate Analyst prior to preparation of the report.<br><br>Limited Summary Approval:<br><br>Analyst: _____  Date: _____ | RCL<br><br><br>N/A |
| 2. <u>Kick Off Call:</u> Appraisers must discuss the format and content for the assignment with the appropriate Real Estate Analyst prior to initiating the assignment.  If the appraiser has not been contacted by an Analyst by the time of inspection, the appraiser must contact an Analyst. | |
| 3. <u>Formats:</u> Narrative reports are preferred. Acceptable "form" reports include:<br><br>• Up to 20 units (apartments, mixed-use): FHLMC Form 71B with addenda comments.<br><br>• Small commercial: UCIAR with addenda comments (InterBay approval required).<br><br>**All reports (narrative or form) must include the information cited below.** | RCL |
| 4. <u>Competency:</u>  A Certified General Appraiser must inspect the property. | RCL |
| 5. <u>Definition of Market Value:</u> As referenced in the most recent edition of USPAP. | RCL |
| 6. <u>Report Content:</u> The level of detail must meet or exceed USPAP and FIRREA requirements. The detail of description for the subject property, comparable properties, and analyses must be sufficient to allow independent review. | RCL |
| 7. <u>Departure:</u> The appraiser must not invoke the departure provision without previous approval of the Interbay Funding, LLC Real Estate Department. The omission of the Cost Approach is not considered a Departure if the approach is not applicable to the property. All <u>applicable</u> approaches to valuation must be developed.<br><br>**Note: if the income capitalization approach is not developed, the appraiser must provide rental comparables and estimate the subject's potential market rent.** | RCL |
| 8. <u>Market Value:</u> An as is market value for the real estate must be reported. Any value that is attributable to personal or intangible property, if any, must be separately allocated. | RCL |
| 9. <u>Special Purpose Properties:</u> Appraisers must discuss the appropriate appraisal content for special purpose properties or properties with excess/surplus land with an InterBay Real Estate Analyst prior to initiating an assignment. | RCL |

Continued on next page

Copyright 2003 InterBay Funding, LLC. All rights reserved. This material may not be published, broadcast, rewritten or redistributed

www.interbayfunding.com

Regional Real Estate Analysts are available at each InterBay location:

| | | |
|---|---|---|
| Ft. Washington, PA | Frank Muller | 800-588-0522 Ext 4526 |
| Foxborough, MA | Mike Shand , MAI | 800-538-6900 Ext 8691 |
| Hollywood, FL | Ray Feraco, MAI | 800-347-0022 Ext 1509 |
| Glendale, CA | Hector Rodriguez | 866-311-2662 Ext 6995 |



# INTERBAY
## FUNDING, LLC

Page 2 of 2                                                    Effective Date July 1, 2003

## APPRAISAL REQUIREMENTS CHECKLIST - COMMERCIAL PROPERTIES

### B. VALUATION REQUIREMENTS

| | Page # |
|---|---|
| **Cost Approach**: (If developed) Comparable land sales are required, with photographs, adjustment grid and comparable location map. The rationale for adjustments must be discussed. The source of construction and depreciation estimates must be noted. | N/A |
| **Sales Comparison Approach**: The comparable data and analyses must be sufficient in detail to allow independent review. The extent of data verification must be reported. Photographs, adjustment grid and comparable location map are required. | 14 - 19 |
| **Income Capitalization Approach**: Comparable rentals are required, and their description must be sufficient in detail to allow independent review. Photographs, an adjustment grid and comparable location map are required. Supporting evidence and comments are required to support estimates of vacancy, expenses and capitalization rates. | 20 - 24 |

### C. CONTENT REQUIREMENTS -- Required content includes:

| | |
|---|---|
| 1. <u>Prior Sales</u>: Analyze and report any sales of the subject property within 36 months of the effective date of the report. Any recent offering, current offering, or pending agreement of sale must be reported, and the appraiser must reconcile the appraised value to any recent or pending transaction. | 1 |
| 2. <u>Historical Data</u>: Documentation should be included for recent renovation or construction costs, operating income and expense statements, and a current rent roll. Leases for commercial units should always be provided. **Appraisers should request InterBay's assistance if required information is not made available.** | N/A |
| 3. <u>Zoning</u>: Identify the specific zoning; state whether the subject is a permitted use; state whether the subject is a conforming use; state whether there are any outstanding building or zoning violations. | 7 |
| 4. <u>Real Estate Taxes</u>: the appraisal should report the actual taxes, the county identification number and whether the current annual taxes are paid. | 10 |
| 5. <u>Subject Photographs</u>: Exterior and interior photographs required. | S.S.F. |
| 6. <u>Building sketch</u>: Must include general interior layout and exterior measurements. | Addenda |
| 7. <u>Tax Map</u>: A tax map that indicates the location of the subject is required. | 10 |
| 8. <u>Marketing Time</u>: the appraiser must report the estimated marketing time. | N/A |
| 9. <u>Extent of Inspection</u>: the appraiser must report the areas that were included in the inspection. For apartment properties, all vacant units and at least 50 percent of the overall units must be inspected. | 1 |

ADDRESS OF SUBJECT PROPERTY:  2617 – 2625 North Market Street, Wilmington, DE

Appraiser Signature *Robt C L*        Date: April 6, 2004

Print Name: Robert C. Lagreca        Phone Number: 215-654-1207

Copyright 2003 InterBay Funding, LLC. All rights reserved. This material may not be published, broadcast, rewritten or redistributed
**www.interbayfunding.com**

Regional Real Estate Analysts are available at each InterBay location:

| Ft. Washington, PA | Frank Muller | 800-588-0522 Ext 4526 |
|---|---|---|
| Foxborough, MA | Mike Shand , MAI | 800-538-6900 Ext 8691 |
| Hollywood, FL | Ray Feraco, MAI | 800-347-0022 Ext 1509 |
| Glendale, CA | Hector Rodriguez | 866-311-2662 Ext 6995 |

EXHIBIT D



**Real Estate Services, Inc.**

Michael A. Lagreca, MAI
Robert C. Lagreca, SRA
Paul D. Quinn, MAI

March 30, 2004

Ms. Cathy Gallagher
Interbay Funding, L.L.C
1301 Virginia Drive, 403
Fort Washington, PA 19034

Re:    Complete Appraisal of Real Property
       In a Summary Report

       2617 - 2625 North Market Street
       City of Wilmington
       New Castle County, Delaware 19802
       Project # - 2040542

Dear Ms. Gallagher:

In fulfillment of our agreement as outlined in the Letter of Engagement, we are pleased to transmit our complete appraisal report on the property referenced above.

The value opinion reported below is qualified by certain assumptions, limiting conditions, certifications, and definitions, which are set forth in the report. We note that this appraisal does not employ any extraordinary assumptions or hypothetical conditions.

This report was prepared for Interbay Funding, L.L.C. and is intended only for their specified use. It may not be distributed to or relied upon by any other persons or entities without the written permission of Lagreca & Quinn Real Estate Services, Inc. This appraisal report has been prepared in accordance with our interpretation of your institutions guidelines, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and the Uniform Standards of Professional Appraisal Practice (USPAP).

This is a complete appraisal presented in a summary report. A summary format of report does not contain all of the information that would normally be found in a self-contained document. A summary report makes a concise presentation of the data and analyses at a level of detail that is less than that in a self-contained report. Nevertheless, the information presented in a summary report is to be sufficient for the client and the intended users of the document to readily understand the appraisal without being misled or confused. The property was inspected by and the report was prepared by Robert C. Lagreca, SRA and Meghan Payne.

This appraisal employs the Sales Comparison Approach and the Income Capitalization Approach. Based on our analysis and knowledge of the subject property type and relevant investor profiles, it is our opinion that these approaches would be considered applicable and/or necessary for market participants. The subject's age makes it difficult to accurately form an opinion of depreciation and tends to make the Cost Approach unreliable. Investors do not typically rely on the Cost Approach when purchasing a property such as the subject of this report. Therefore, we have not utilized the Cost Approach to develop an opinion of market value.





1121 Horsham Road  Ambler, Pennsylvania 19002  215.654.1207 ·Fax 215.654.0276

Ms. Cathy Gallagher                                      Lagreca & Quinn Real Estate Services, Inc.
Interbay Funding, L.L.C
Page 2

Based on our Complete Appraisal as defined by the *Uniform Standards of Professional Appraisal Practice*, we have developed an opinion that the market value of the fee simple estate of the referenced property, subject to the assumptions and limiting conditions, certifications, extraordinary and hypothetical conditions, if any, and definitions, "as-is" on March 30, 2004 is:

## ONE HUNDRED FORTY THOUSAND DOLLARS

## $140,000

Based upon transactions that have occurred in the marketplace as well as discussions with knowledgeable market participants, exposure time would have required approximately twelve (12) months.

This letter is invalid as an opinion of value if detached from the report, which contains the text, exhibits, and Addenda.

Respectfully submitted,

Lagreca & Quinn Real Estate Services, Inc.

Robert C. Lagreca, SRA                      Meghan Payne
DE Certified General Appraiser              Assistant to the Certified
License No. 014935                          Real Estate Appraiser

EXHIBIT E

### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT E. BROWN and, ) | |
| SHIRLEY H. BROWN, h/w, ) | C. A. 04-617 SLR |
| Plaintiffs, ) | |
| v. ) | |
| ) | JURY DEMANDED |
| INTERBAY FUNDING, LLC, and ) | |
| LEGRECA & QUINN REAL ESTATE ) | |
| SERVICES INC., ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT

STATE OF $P\!A$    :
                           :    SS.
Montgomery COUNTY    :

BE IT REMEMBERED, that on this 24th day of March    , A.D., 2005,

personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid,

Robert Legreca, who did depose and say that he is a representative of the Defendant Lagreca &

Quinn Real Estate Services, Inc. in the foregoing action and the Responses set forth in Defendant

Lagreca & Quinn's Supplemental Answers to Plaintiffs' Interrogatories Pursuant to Court Order D.I.

72 are true and correct to the best of his knowledge, information and belief.

Robert Lagreca

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

Notary Public

NOTARIAL SEAL
SHERON M. CAMPBELL, Notary Public
Lower Gwynedd Twp. Montgomery County
My Commission Expires November 13, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT E. BROWN and, | ) | |
| SHIRLEY H. BROWN, h/w, | ) | C. A. 04-617 SLR |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| INTERBAY FUNDING, LLC, and | ) | |
| LEGRECA & QUINN REAL ESTATE | ) | |
| SERVICES INC., | ) | |
| | ) | |
| Defendants. | ) | |

SUPPLEMENTAL ANSWERS OF DEFENDANT
LEGRECA & QUINN REAL ESTATE SERVICES, INC.
TO PLAINTIFFS' INTERROGATORIES PURSUANT TO
<u>COURT ORDER D.I.72</u>

9.    Why were parcels 2617 and 2619 Market Street (which appear on the city tax roll assessment and have their own parcel numbers, with municipal services, public utilities, and consist of 5,090 sq. ft., zoned commercial), nominated "utilities" instead of parcels or lots consisting of 5,090 sq. ft.?

**ANSWER:**    **Objection to the extent that this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the parcels 2617 and 2619 are not utilities, but rather are part of the subject property's utility. The subject property is a two-story former semi-detached residential dwelling converted into a commercial building with a paved parking lot. The paved parking lot is located on parcels at 2617 and 2619 Market Street. The subject property was appraised as a single unit of commercial property. The appraisal of the subject property took into**

consideration the utility of the subject property. It is usual and customary in the ordinary course of the business of Real Estate Appraisal to consider the functional utility of a property. The functional utility is the ability of a property or building to be useful and to perform the function for which it is intended according to current market tastes and standards and encompasses the efficiency of a building's use in terms of its style, design and layout, traffic patterns and physical features. The functional utility of the subject property was appraised at a higher value than those of the comparable properties specifically because of the parking lot on parcels 2617 and 2619 as indicated on page 18 of the Appraisal Report. The Appraisal Report has been produced as part of Rule 26 discovery responses and is already part of the record in this litigation.

10.    Why were parcels or lots 2617 and 2619 containing 5,090 sq. ft. reduced to utilities instead of given best use and value consideration?

ANSWER:    Objection to the extent that this interrogatory mischaracterizes the appraisal report in that the parcels at 2617 and 2619 were not and are not utilities. Without waiving this objection, Answering Defendant Legreca & Quinn was contracted by Co-Defendant Interbay Funding to appraise the subject property located at the address 2617, 2619 and 2625 Market Street as one unit of commercial property. Since the parcels located at 2617 and 2619 were only a portion of the subject property to be appraised, these portions were not segregated from the subject

property would have if vacant. Answering Defendant then concluded that the highest and best use of the subject property was for it to continue in commercial use.

11.     Why were parcels 2617 and 2619 Market Street, with tax roll Assessment numbers, municipal services, public utilities, 5,090 sq. ft., zoned commercial nominated as "utilities" not given a market value?

ANSWER:     Objection to the extent that this Interrogatory mischaracterizes the appraisal report. Without waiving this objection, parcels 2617 and 2619 Market Street were only a portion of the subject property being appraised as one unit of commercial property. As such, these parcels were given a market value as part of the subject property which was given a market value of $140,000.00 under two separate and distinct appraisal approaches.

12.     What are the market values of parcels/lots 2617 and 2619 as "utilities", market value?

ANSWER:     Unknown. Answering Defendant has not determined the separate market value of the parcels located at 2617 and 2619 Market Street segregated from the parcel located at 2625 Market Street. It is not a usual or customary method in the business of Real Estate Appraisal to appraise a single commercial property composed of several tax parcels by appraising each parcel separately.

property but were considered to have best use and value as a portion of the subject property to which they were connected. The subject property site's highest and best use was evaluated by considering the property as a whole both vacant and as improved. As vacant, Answering Defendant evaluated what was physically possible at the site and determined that the site's size, soil and topography did not physically limit its use. Answering Defendant then considered all the permitted uses of the subject property. The property is zoned C-1 which allows it to be developed for a wide variety of commercial uses including retail stores and personal service businesses. After analyzing the physically possible and legally permissible uses of the subject property, Answering Defendant considered the financial feasability and maximum productivity and determined that the highest and best use of the subject site as though vacant would be for commercial development. Answering Defendant then considered the highest and best use of the subject property as improved with a two-story, former semi-detached dwelling converted into a beauty salon with a gross building area of 1,875 plus or minus square feet. As improved, the subject property was available for a commercial use with parking for patrons of the business contained thereon. Answering Defendant deemed that the subject property fits relatively well with its surroundings and that the general market for commercial properties appears to be relatively stable in that area. Answering Defendant further determined that the value of the subject property as improved was considered greater than the value the subject

13.    Why was the Cost Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    The parcels with the address 2617 and 2619 Market Street are only a portion of the subject property for which Co-Defendant Interbay Funding contracted with Defendant Legreca and Quinn to appraise. The subject property was appraised as one total parcel of real estate. The cost approach was deemed to be an unreliable method by which to appraise the subject property because the cost approach is based on a proposition that an informed purchaser would pay no more for the subject property than the cost to produce a substitute property with equivalent utility. The Cost Approach is particularly applicable where the property being appraised has relatively new improvements or unique improvements for which there are few comparable properties. The cost approach requires the appraiser to form an opinion of the cost of all improvements then depreciate them to reflect value lost from physical, functional and external causes. Answering Defendant deemed the Cost Approach as an unreliable method to appraise the subject property due to the subject property's age. Such age made it difficult to accurately form an opinion of depreciation value and, therefore, would not be a reliable method to appraise the subject property, which included the parcels addressed 2617 and 2619 and 2625 Market Street.

14.    Why was the Income Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the Income Capitalization

Approach was used as one of two separate and distinct methods by which the value of the entire subject property was appraised. The subject property includes the three tax parcels 2617, 2619 and 2625 North Market Street. The appraisal was done on the whole subject property as one commercial unit. The appraisal was done on the property as a whole, taking into account all features of the building and land.

15.    Why was the Comparable Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the Sales Comparison Approach was used as one of two separate and distinct methods by which the value of the entire subject property was appraised. The subject property includes the three tax parcels 2617, 2619 and 2625 North Market Street. The appraisal was done on the whole subject property as one commercial unit. The appraisal was done on the property as a whole, taking into account all features of the building and land.

17.    Why was [sic] there only two methods used on evaluation of 2625 Market Street?

ANSWER:    There are generally three accepted approaches available to appraise the value of commercial property, Cost, Sales Comparison, and Income Capitalization. Answering Defendant considered and analyzed each approach and deemed the Cost Approach to be inappropriate for the subject property. 2625 Market Street was only a portion of the subject

property. Please see the Answer to Interrogatory Number 13 which explains why the cost approach was not deemed to be a reliable method by which to appraise the subject property.

18.    Why were parcels 2617 and 2619 Market Street, (with tax roll assessment numbers, municipal services, public utilities, 5,090 sq. ft. zoned commercial, capable of producing income and being used as collateral to secure the loan,) not given a market value at all?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report. Without waiving this objection, Answering Defendant did not determine the separate market value of the parcels located at 2617 and 2619 Market Street segregated from the parcel located at 2625 Market Street because it is not a usual or customary method in the business of Real Estate Appraisal to appraise a single commercial property unit composed of several tax parcels by appraising each parcel separately. The tax parcels addressed 2617 and 2619 Market Street are only a portion of the subject property which was appraised. The subject property as a whole, including all three tax parcels, were given a market value of $149,000.00 based upon two separate and distinct appraisal methods.

22.    Why does the appraisal state that the lot which consists of 5,090 sq. ft. would only hold 10 cars, when in fact it will accommodate at least 20 cars?

ANSWER:    Objection to the extent that this Interrogatory mischaracterizes the statements contained within the appraisal report. The appraisal report does not state that any lot would hold only 10 cars. Without waiving this objection, in order to answer this interrogatory, Answering Defendant

points out that the subject property appraised had a total land area of 6,970 plus or minus square feet including an improvement of a two story masonry building with a gross building area of 1,875 plus or minus square feet and site improvements including concrete curbs, sidewalks, macadam paved parking lot which would hold 10 plus or minus cars and signage. The designation of "10 plus or minus cars" was used in the report as an indication that there is a parking lot situated within the subject property which is deemed to be ample in size to accommodate patrons' use of the subject property as improved.

23.     Why is the parcel/lot 2625, combined building and parcel/lot space measuring 1,895 sq. ft. given an arbitrary and capricious dollar value, and parcels/lots 2617 and 2619 Market Street, consisting of 5,090 sq. ft. assigned an arbitrary and capricious value that can not be stated?

ANSWER:     Objection to the extent that this Interrogatory maliciously mischaracterizes and maligns the appraisal report by calling it "arbitrary and capricious." Without waiving this objection, the entire subject property which consisted of all three parcels/lots addressed 2617, 2619 and 2625 Market Street was appraised as a single commercial unit using two separate and distinct appraisal methods which are routinely used within the ordinary course of the business of Real Estate Appraisal and which are recognized by the Uniform Standards of Professional Appraisal Practice.