```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
ROBERT E. BROWN and              :
SHIRLEY H. BROWN,
                                 :
              Plaintiffs
                                 :   C.A. No. 04-6 17 SLR
     vs.
                                 :
INTERBAY FUNDING, LLC, and
LEGRECA & QUINN REAL             :
ESTATE SERVICES, INC.,
                                 :
              Defendant
```

     Deposition of ROBERT E. BROWN taken pursuant to notice at the law offices of Reger & Rizzo, 1001 N. Jefferson Street, Suite 202, Wilmington, Delaware, beginning at 2:20 p.m., on Thursday, March 17, 2005, before Allen S. Blank, Registered Merit Reporter and Notary Public.

APPEARANCES:
    CAROL J. ANTOFF, ESQUIRE
    REGER & RIZZO
    1001 N. Jefferson Street
    Wilmington, DE 19801

        For - Defendant Legreca & Quinn Real
              Estate Services
ALSO PRESENT:
    SHIRLEY H. BROWN

---

            WILCOX & FETZER, LTD.
      1330 King Street - Wilmington, DE 19801
                  (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

```
 1        A     Yes, ma'am.
 2        Q     Have you had an appraisal expert of real
    estate, commercial real estate appraisal expert, review
    Legreca & Quinn's appraisal?
 5        A     No.
 6        Q     Have you obtained an independent appraisal
    of the subject property conducted by a certified
    commercial real estate appraiser?
 9        A     Prior to applying to Interbay, there was an
    appraisal done by the broker, which we paid for.  So I
    guess that answer would be yes.
12        Q     Was that the one that was taken by -- that
    was done by Steven Ulrich?
14              MRS. BROWN:  Yes.  Both.
15              THE WITNESS:  Northern Bay.  Something like
    that.
17              MS. ANTOFF:  We have a problem.  I
    understand that you can help with his answers.  But it
    is his deposition and it has to be -- the answers with
    him.  You're really not allowed to speak during his
    deposition.  If you want, when he is done, if you feel
    that there was something that you wanted to add to it,
    you know, we can give you that at that time.
24              MRS. BROWN:  No, I don't have any problem
```



WILCOX & FETZER LTD.
Registered Professional Reporters

1    Q    Okay.

2    A    But if I don't remember the name, I mean, my wife was just merely stating something, you know.

But, anyway, we'll proceed. We will conform to what you're saying.

6    Q    Okay.

Do you have any documents or other evidence that support your contention that Legreca & Quinn's methods of appraising the subject property were erroneous?

11    A    The only ones that I have submitted is the production of documents and affidavits that I filed with my motions and the complaint.

14    Q    Okay. So everything that you have has been submitted?

16    A    Yes.

17    Q    Do you have any expert report, a report that was prepared by a real estate appraisal expert, which indicates that the subject property should not be appraised as a building located on 1,875 square feet, which is situated on total land property of 6.970 square feet?

23    A    Excuse me. You said do I have an expert --

24    Q    Report.

| | | |
|---|---|---|
| 1 | A | Report saying that? |
| 2 | Q | That says that that's not the way the property should be appraised? |
| 4 | A | Yes. And my question. Let me elaborate on that. Is that under the Uniform Code Of Appraisals of the Appraisal Institute, their guidelines state that appraisals are done by three standard methods. Okay. It's income, market value and comparables as a standard method of appraisal. A complete appraisal means when dealing in real estate, according to the FHA and the ECOA guidelines, CFR guidelines state, I think it is 204.13, something like that, of the CFR, states that any properties or homes or buildings being used for collateral must go through those particular standards of evaluation. |
| 16 | Q | My question was, do you have a report prepared by an expert? |
| 18 | A | No, I don't. Not at this time. |
| 19 | Q | Have you consulted any real estate appraisal expert to give your opinion regarding a complete appraisal? |
| 22 | A | Not at this time. |
| 23 | Q | Do you have a report prepared by a real estate appraisal expert which indicates the subject |



1  property shouldn't be appraised by the sales comparison
2  approach?
3       A    No, I do not.
4       Q    Do you have a report prepared by an
5  appraisal that indicates that the subject property
6  should not be appraised by the income capitalization
7  approach?
8       A    Do I have -- ask the question again.
9       Q    Okay. Do you have any report prepared by a
10 real estate appraisal expert which would indicate that
11 the subject property should not be appraised by the
12 income capitalization approach?
13      A    No, I do not.
14      Q    It is my understanding from your earlier
15 question that you do not have an expert real estate
16 appraiser who has prepared a report for you at all, is
17 that correct?
18      A    I told you before that the broker who we
19 first applied through had it appraised. Now, this term
20 expert, I don't quite understand what you mean by
21 expert. I mean we had licensed appraisers to evaluate
22 the property, yes, prior to Legreca & Quinn.
23      Q    Did you have more than one licensed
24 appraiser to that property?



1   know, this is all in code and it is right in the letter
2   of engagement.
3           And then it goes on to say that no one is
4   supposed to see this letter or know anything about this
5   information that we are talking about.
6           And so I'm saying, this is a letter here.
7   In fact, it states that. And I can read it verbatim,
8   if you want.
9   BY MS. ANTOFF:
10      Q    That's okay. It is already in the record.
11           Do you have any evidence that Legreca &
12  Quinn has appraised properties that are similar to the
13  subject property but have used different methods?
14      A    You mean other properties?
15      Q    Um-hmm, other properties.
16      A    For other people?
17      Q    For other people.
18      A    No, that is not my concern or -- yeah. But,
19  again, I can say they did on me. They did on me.
20      Q    My understanding from your answers to the
21  interrogatories is that you intended to join the
22  building at 2625 Market Street, of the subject
23  property, with the building next-door at 2627 Market
24  Street to create an eat-in restaurant; is that correct

```
 1   successful business.
 2        Q    Do you have any documents or --
 3        A    Any what?
 4        Q    Any documents or other kind of evidence that
 5   support your contention that Interbay engaged in
 6   fraudulent misrepresentations?
 7        A    The ones that I have submitted to you that
 8   are a part of the Rule 7 of the Appraisal Institutes,
 9   which are part of the record, those documents are
10   there.  The letter of engagement that we relied on.
11   Their letter of acceptance of the engagement letter are
12   the ones that we rely upon and the appraisal itself.
13   The exhibit page -- I forget the page of the
14   original -- I think it's page 18 of the original
15   appraisal where they had to graft on there where they
16   were supposed to have made some allowances for the 2617
17   and 2619, referring to them as utilities, was a stark
18   violation of the Rule 7 article or rules of the
19   Appraisal Institute.
20        Q    Okay.  Have you consulted any licensed
21   appraisal expert that informed you of violations?
22        A    Have I consulted?  No.  But I have called
23   and talked to the Appraisal Institute and I wanted
24   to -- we were considering subpoenaing them.  I
```

```
 1   subpoenaed the Federal -- the Federal Trade Commission
 2   and the -- I subpoenaed a whole lot of people.
 3              But, anyway, people who are in the industry
 4   who know that these are blatant violations that they
 5   have used in this here bogus appraisal of properties
 6   containing of 6,985 square feet, to tell me that you're
 7   going to appraise -- I paid $2,500 and you're only
 8   going to appraise 975 square feet and tell me the other
 9   two properties are utilities, I mean that's like, you
10   know, a man buying a farm with a house on it and you
11   have appraised the house and then you call the land a
12   utility and charge -- how much are you going to charge
13   for the house?  Why would you do that?  That really --
14              See, Stacy Buckwalter, he never dreamed that
15   this would be here.  We will be doing this for the next
16   20 years for what he did to me, took my money and then
17   Legreca & Quinn.
18              And you ought to heard the way they talked
19   to me.  Oh, it was an insult.  It was like he slapped
20   me in my face.  I have been doing this since 1972.
21        Q      Okay.  But the question that I'm not sure
22   that I understood your answer to was, have you
23   consulted with any licensed appraiser who has told you
24   that --
```

1   A    I don't need them to tell me.  What I'm
2   saying is, I am experienced in purchasing and selling
3   of real estate.  I have been in real estate longer than
4   most realtors.
5   Q    I understand that, that you're an
6   experienced business person.
7   A    I'm saying, I don't need -- and then I got
8   this term expert.  I have a problem with that.  I don't
9   know anyone in the field that is any smarter than I am.
10  Really.  I mean seriously.
11  Q    So your answer is, no, that you haven't
12  consulted a licensed appraiser?
13  A    I have not found a need to have to rely on
14  anyone other than my own experiences and knowledge at
15  this time.  I repeat, at this time.
16       MS. ANTOFF:  Mr. Brown, those are the only
17  questions that I have for you.  I appreciate your time.
18  Thank you.
19       THE WITNESS:  I appreciate being here.  And
20  I think we went and got it over with.  Yeah.  Is that
21  it?  Do we conclude?
22       MS. ANTOFF:  Yes.  Don't turn it off.
23       You have a right -- if you have been deposed
24  before, you probably know this.  But you have a right



```
1   State of Delaware            :

2   County of New Castle         :

3

4                  CERTIFICATE OF REPORTER

5          I, Allen S. Blank, Registered Merit
    Reporter, do hereby certify that there came before me
6   on the 17th day of March, 2005, the deponent herein,
    ROBERT E. BROWN, who was duly sworn by me and
7   thereafter examined by counsel for the respective
    parties; that the questions asked of said deponent and
8   the answers given were taken down by me in Stenotype
    notes and thereafter transcribed by use of
9   computer-aided transcription and computer printer under
    my direction.
10
           I further certify that the foregoing is a
11  true and correct transcript of the testimony given at
    said examination of said witness.
12
           I further certify that I am not counsel,
13  attorney, or relative of either party, or otherwise
    interested in the event of this suit.
14

15

16

17              Allen S. Blank, RMR

18              Certification No. 103-RPR

19              (Expires January 31, 2008)

20

21

22
    DATED:  March 22, 2005
23

24
```



WILCOX & FETZER LTD.
Registered Professional Reporters