## TABLE OF CONTENTS

**Table of Contents** ……………………………………………………………i-ii

Complaint ……………………………………………………………1-9

**Title 24 Chapter 29 REAL ESTATE BROKERS, SALESPERSONS AND APPRAISERS**

Subchapter II. Regulation of Real Estate Appraisers § 2938. (Disciplinary proceedings; reprimands; revocation of privileges).

### STATUTES

Title 24 Chapter § 2938, ,(2), (5), (6), (7), (8), and (9)                    3-5

### CITATIONS

Appraisal Inst. v. Gallagher …………………………………..………………2

Andrew D. Meloy & Co. v. Donnelly ……………………………………………2

### SUPPORTING DOCUMENTS

Chief District Court Judge Sue L. Robinsons' Memorandum Opinion of November 8th, 2004; "Standard of Review" Pages 5-6 ………………….............**Exhibit (A)**

Professional License and Qualifications of Robert C. Legrecca for the State of Delaware ……………………………………………………… **Exhibit (B)**

SRA Designations …………………………………………………... **Exhibit (B1)**

Interbay Funding LLCs letter of Engagement………………………. **Exhibit (C)**

Chief District Court Judge Sue L. Robinsons' "Order Compelling" (Legreca and Quinn) to answer Plaintiffs Interrogatories a second time……………. **Exhibit (D)**

Robert Legrecas' Affidavit of March 24th, 2005 in which he has sworn his answers to       Plaintiffs second set of Interrogatories are true and correct to the best of his knowledge and belief…………………………………... **Exhibit (E)**

i

Responses to Complaints to Delaware and Pennsylvania Regulatory Agencies and of Peter D. Kovach, Prosecuting Attorney Prosecuting Division of April 6th 2005 …………………………………………………………..……...**Exhibit (F)**

Robert C. Legrecas Affidavit of March 24[th,] 2005 in which he has sworn the first time to be true and correct to the best of his knowledge, information and belief. (See attached………………………………………………………………… **Exhibit (G)**

Letter of acceptance of Assignemnt by Legreca and Quinn…………...**Exhibit (H)**

**Certificate of Service………………………………….………... Attached.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT E. BROWN and            )
SHIRLEY H. BROWN,              )
                               )
        Plaintiffs,            )
                               ) Civ. No. 04-617-SLR
    v.                         )
                               )
INTERBAY FUNDING, LLC, and     )
LAGRECA & QUINN REAL ESTATE    )
SERVICES, INC.,                )
                               )
        Defendants.            )

---

Robert E. Brown and Shirley H. Brown, Wilmington, Delaware. Pro Se.

David L. Finger, Esquire of Finger & Slanina, Wilmington, Delaware. Counsel for Defendant Interbay Funding, LLC. Of Counsel: David M. Souders and Sandra L. Brickel of Weiner Brodsky Sidman Kider, Washington, D.C.

Carol J. Antoff, Esquire of Reger & Rizzo, Wilmington, Delaware. Counsel for Defendant Lagreca & Quinn Real Estate Services, Inc.

---

**MEMORANDUM OPINION**

Dated: November 8 , 2004
Wilmington, Delaware

ROBINSON, Chief Judge

I.   INTRODUCTION

On June 28, 2004, plaintiffs Robert E. Brown and Shirley H. Brown filed this action against defendants Interbay Funding, LLC ("Interbay") and Lagreca & Quinn Real Estate Services ("Lagreca & Quinn") alleging discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § § 1691 et seq., and the Fair Housing Act, 42 U.S.C. § § 3601 et seq.; negligence; fraud; violations of the Federal Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § § 3331 et seq.; and violations of the Uniform Appraisal Standards of Professional Appraisal Practice.  (D.I. 1)  Pending before the court are plaintiffs' motion for sanctions under Federal Rule of Civil Procedure 11 (D.I. 22) and Interbay's motion to dismiss.  (D.I. 8)  For the following reasons, the court denies plaintiffs motion for sanctions and grants Interbay's motion to dismiss.

II.   BACKGROUND

On March 11, 2004, plaintiffs contracted to purchase three parcels of property located at 2617-2619-2625 Market Street, Wilmington, Delaware ("property").  (D.I. 1)  One parcel contains a two-story, semi-detached commercial building; the other two are paved parking lots.  (D.I. 11 at Ex. A)  The building is a dwelling, built in 1915, that has been converted into a beauty salon.  Id.  Plaintiffs intended to use the commercial property to expand their restaurant business.  (D.I. 9 at 4)

Plaintiffs applied for a mortgage loan through Janet Madrick, a broker for Sunset Mortgage Company. Id. A loan application was then submitted to Interbay, the mortgage lender. Id. Interbay approved the loan application subject to an appraisal of the property, to assure that there was sufficient collateral for the loan. Id. Interbay contracted with Lagreca & Quinn to perform the appraisal. Id. at Ex. A. The agreement required plaintiffs to pay $2,500 for the appraisal.

Based on other properties within the same zip code, plaintiffs expected the property to be valued "around the $200,000 range." (D.I. 1 at 3) Lagreca & Quinn valued the property at $140,000. (D.I. 9 at Ex. A) After the appraisal, Interbay adjusted plaintiffs' mortgage, agreeing to finance 65% of the purchase price instead of 80% and requiring plaintiffs to make a down payment of 35% of the purchase price instead of 20%. (D.I. 9 at 5)

After finding out that the terms of the mortgage had changed, plaintiffs had their bank rescind the $2,500 that had been transferred to Lagreca & Quinn because they disputed the accuracy of the appraisal.[1] (D.I. 1 at 4) Plaintiffs alleged that Lagreca & Quinn only appraised one of the lots and compared

---

[1]There is a dispute regarding when plaintiffs actually received a copy of the appraisal. Plaintiffs allege Interbay refused to provide them a copy upon request, but Interbay insists they received one.

the property to those outside the appropriate area.  (D.I. 11 at
, D.I. 9 at 5)   Initially, Interbay agreed to have all three
parcels reappraised based on plaintiffs' arguments, but later
informed plaintiffs that the original appraisal had taken the two
paved lots into consideration.  The appraisal considered paved
parking lots as utility added to the parcel with the commercial
building.  (D.I.   9, Ex. A at 18)  Because none of the lots used
for comparison had on-site parking, Lagreca & Quinn assigned a
higher value to the parcel with the commercial building, as
opposed to valuing the two paved lots independently.[2]  Id.

## III. PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

Federal Rule of Civil Procedure 11 allows a court to
sanction a party or attorneys under limited circumstances.  A
court can award sanctions if a party or attorney has presented a
motion for an "improper purpose," the claims or defenses put
forth in a motion are frivolous, the claims in a motion are not
likely to be supported by the evidence after investigation, or a
party wrongfully denies a factual allegation.  See Fed. R. Civ.
P. 11(b) (2004).

Plaintiffs allege defendants wrongfully denied factual
allegations in their answer because defendants denied
discriminating against them.  (D.I. 22 at 5)  A finding that

---

[2]The result was a value based on 1,875 square feet, the size
of the parcel with the building, as opposed to 6,980 square feet,
the size of all three parcels.

3

defendants wrongfully denied plaintiffs' allegations in their answer would require the court to first find that defendants discriminated against plaintiffs. Thus far, defendants have alleged a sufficient factual basis for denying plaintiffs' allegations; therefore, defendants did not necessarily misrepresent the issue to the court when they denied plaintiffs' allegations.

Plaintiffs also allege defendants misrepresented a document to this court because they failed to include a page of the document. (D.I. 22 at 2) The allegedly omitted page is a page of a fax sent by Interbay to plaintiffs to explain the appraisal. (Id. at Ex. 2) It is not a page of the appraisal. There is no evidence of bad faith on the part of the defendants. Therefore, the court declines to sanction defendants or their attorneys for the alleged omission.

**IV.  INTERBAY'S MOTION TO DISMISS**

Interbay claims that plaintiffs failed to assert a cause of action against it because plaintiffs do not allege that Interbay performed the discriminatory appraisal. Plaintiffs argue that Interbay is responsible for Lagreca & Quinn's discrimination based on principles of agency.

## A.   Standard of Review

Because the parties have referred to matters outside the pleadings, Interbay's motion to dismiss shall be treated as a motion for summary judgment.[3]  <u>See</u> Fed. R. Civ. P. 12(b)(6).  A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and

---

[3]Interbay included both a copy of the appraisal and its engagement letter to Lagreca & Quinn among its papers.

all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### B.    Interbay's Reliance on the Appraisal

The ECOA prohibits discrimination by a creditor "against any applicant, with respect to any aspect of a credit transaction . . . based on race . . . ."  15 U.S.C. § 1691 (a).  Likewise, the FHA provides:

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605(a).  Federal rules prohibit lenders from relying on an appraisal that they know, or should know, is discriminatory

in violation of the FHA or the ECOA. See 12 C.F.R. § 528.2a
(2004).

The court is not prepared to decide on the record presently
before it whether the appraisal was discriminatory and, if so,
whether Interbay knew or should have known that the appraisal was
discriminatory.  For example, the court has no evidence relating
to valuation, i.e., whether valuing the single parcel with the
building and the utility of on-site parking (instead of all three
parcels individually) was appropriate.  As such, the court denies
Interbay's motion for summary judgment without prejudice to renew
at the completion of discovery upon a more developed factual
record.

    C.   **Interbay's Relationship with Lagreca & Quinn**

    Plaintiffs claim that Interbay is liable for the
discriminatory appraisal because Lagreca & Quinn was acting as
its agent.  Agency relationships require the agreement that one
party will act on behalf of another and the "understanding that
the principal is to be in control . . . ."  See Restatement
(Second) of Agency § 1 cmt. b (1958).  "It is the element of
continuous subjection to the will of the principal which
distinguishes the . . . agency agreement from other agreements."
Id.  Without this level of control, an entity who contracts to
perform a service for another is merely an independent
contractor. See id. at § 2.

7

Interbay contracted with Lagreca & Quinn to provide an "independent appraisal" report. (D.I. 19 at Ex. 2)  In the letter dated March 30, 2004, Lagreca & Quinn indicated it was submitting the appraisal on the property at issue "[i]n fulfillment of [its] agreement as outlined in the Letter of Engagement." (D.I. 11 at Ex. A)  Interbay was not entitled to use the appraisal for any use other than that specified in the agreement.  Id.  Although the agreement placed certain requirements on the appraisal, Interbay was not in control of the process.  Lagreca & Quinn used its own tools and employees to appraise the property.  In addition, Interbay was not responsible for paying Lagreca & Quinn for the appraisal, as plaintiffs paid for it.  The court concludes that Lagreca & Quinn was acting as an independent contractor because its conduct was not controlled by Interbay.  Because there is no agency relationship, Interbay is not liable for any alleged discrimination by Lagreca & Quinn.

## V.   CONCLUSION

Plaintiffs' motion for Rule 11 sanctions is denied. Interbay's motion to dismiss is granted in part and denied in part.  Interbay's motion is granted with respect to plaintiffs' claims that it is liable for Lagreca & Quinn's appraisal because of an agency relationship.  Interbay's motion is denied with respect to plaintiffs' claim that it relied on a discriminatory

8

appraisal in violation of 12 C.F.R. § 528.2a.  An order consistent with this memorandum opinion shall issue.



LICENSE NO.    X1-0000321

PROFESSION:   Certified General Real Property Appraiser

ISSUED TO:    Robert C. Lagreca

MAILING ADDRESS

Robert C. Lagreca
248 Belmont Avenue
Amber PA 19002

STATE OF DELAWARE
DIVISION OF PROFESSIONAL REGULATION
861 Silver Lake Blvd.
Cannon Building, Suite 203
Dover, DE 19904-2467

NOT TRANSFERABLE

EXPIRATION DATE:    10/31/2005

PROFESSIONAL LICENSE

014935

THIS CERTIFIES THAT THE PERSON NAMED IS HEREBY LICENSED TO
CONDUCT OR ENGAGE IN THE PROFESSION INDICATED ABOVE. THIS
DOCUMENT (SEAL/STAMP) MUST BE THE LAWS OF THE STATE OF DELAWARE.

LICENSE SEE ALONE

## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT E. BROWN and,** | ) | |
| **SHIRLEY H. BROWN, h/w,** | ) | **C. A. 04-617 SLR** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| **INTERBAY FUNDING, LLC, and** | ) | |
| **LEGRECA & QUINN REAL ESTATE** | ) | |
| **SERVICES INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT

I, Robert Lagreca, hereby depose that I am a duly authorized representative of Lagreca & Quinn Real Estate Services, Inc., a Defendant in the above-captioned matter, and that the following statements are true:

1.     I am a Certified General Real Property Appraiser certified by the State of Delaware and the Commonwealth of Pennsylvania.

2.     I am a Senior Residential Member in good standing of the Appraisal Institute.

3.     My education, training and experience make me qualified to testify regarding the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation (hereinafter "USPAP") which is authorized by Congress as the source of Appraisal Standards and Appraisal Qualifications.

4.     My education, training and experience make me qualified to testify regarding the Standards of Professional Appraisal Practice of the Appraisal Institute (hereinafter "SPAP").

5.      The property at 2617, 2619 and 2625 Market Street, Wilmington, Delaware, which is the subject of the above-captioned litigation (hereinafter "subject property"), consists of three separate tax parcels.

6.      The subject property was appraised as one commercial unit consisting of the two-story dwelling converted into commercial use with on-site parking.

7.      It is the usual, customary and accepted practice within the business of Real Estate Appraisal to determine the value of commercial property located over more than one tax parcel as a whole.

8.      It is not the usual, ordinary or accepted practice in the business of Real Estate Appraisal to appraise a single unit of commercial property located on several tax parcels by valuing each tax parcel separately.

9.      The appraisal of the subject property as a commercial building with on-site parking conforms with the USPAP and the SPAP.

10.     Standard Rule 1-4(e) of USPAP states that the appraiser must analyze the value "of the assembledge of the various estates and component parts of the property and refrain from valuing the whole solely by adding together the individual values of the various estates or component parts."

11.     Standard Rule 3-1(f) of USPAP mandates that the appraiser determine what appraisal method is appropriate for the particular property to be appraised and does not require that all three methods (Sales Comparison Approach, Cost Approach and Income Approach) be used on the property appraised.

12.     All analyses, opinions and conclusions in the appraisal report provided to Interbay

Funding, LLC, were prepared in conformity with the USPAP, the SPAP and the Code of Professional Ethics .

_____
Robert C. Lagreca

STATE OF   PA   :
                          :   SS.
Montgomery   COUNTY   :

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

1 April 2005

_____
Notary Public

NOTARIAL SEAL
SHERON M. CAMPBELL, Notary Public
Lower Gwynedd Twp., Montgomery County
My Commission Expires November 13, 2006

RECYCLED PAPER MADE FROM 20% POST CONSUMER CONTENT



AVERY™

# Richard Hagar SRA

## What is the SRA designation?

*SRA ='s The Bes*



Home Page

Appraisal Services

Expert Witness

Contact the Appraiser

Appraiser Resume

Appraiser References

Appraisal Engagement Terms

SRA Designation

Retype Appraisals

Service Area Map

### Member of the Appraisal Institute

**Summary -**
1. SRA is a Designation issued by The Appraisal Institute.

2. Fewer than 1% of all appraisers, nationwide have the SRA Designation.

3. SRA's primary focus is on residential appraisals.

4. To obtain the SRA, appraiser's need more education and experience than a "typical" appraiser.

5. Licensed or Certified appraisers are the minimum, while SRA or MAI designated appraisers are at the top of the appraiser hierarchy.

Real Estate Classes

Purchase Appraisal Forms and Addendums

Real Estate Advisor

Links

Index

**The Long Version -**
Designated members of the Appraisal Institute are known around the world for their knowledge and experience as well as their unbiased and objective approach to real property appraisal and analysis. To hold an Appraisal Institute designation, an individual must meet rigorous education, experience and ethical requirements. By engaging the services of a designated member of the Appraisal Institute, you will benefit from the most skilled and experienced real estate appraisal professionals around. Most designated members hold one or more of the following designations.

• The **MAI** membership designation, which is held by appraisers who are experienced in the valuation and evaluation of commercial, industrial, residential and other types of properties, and who advise clients on real estate investment decisions.

• The **SRPA** membership designation, which is held by appraisers who are experienced in the valuation of commercial, industrial, residential and other types of property.

• The **SRA** professional membership designation, which is held by real estate solutions providers who are experienced in the analysis and valuation of residential real property. Currently the Appraisal Institute confers the MAI and SRA designations.

**The current requirements to receive the SRA designation are:**

**Education**
• Receive a passing grade on seven examinations that reflect 181 hours of classroom instruction and that test the appraiser's knowledge of appraisal principles, residential valuation techniques, report writing and standards of professional practice
• Hold an undergraduate degree from an accredited educational institution (or satisfy a specified alternative)

**Experience**
Receive credit for 4,500 hours of experience, including 2,000 hours of residential appraisal experience, all of which must meet strict criteria

**Demonstration Report**
Receive credit for a demonstration appraisal report relating to a residential property that demonstrates the ability to present a properly supported value estimate or opinion evaluating the nature, quality, or utility of a parcel of real estate or any interest in, or aspect of, real property, OR fulfill an approved comparable alternative

**The current requirements to receive the MAI designation are:**
**Education**
• Receive a passing grade on 11 examinations that reflect 380 hours of classroom instruction and that test the appraiser's knowledge of basic and advanced appraisal principles, procedures and applications; report writing; valuation analysis and standards of professional practice
• Receive a passing grade on a four-module, two-day comprehensive examination
• Hold an undergraduate degree from a four-year accredited educational institution

**Experience**
Receive credit for 6,000 hours of experience, including 3,000 hours of specialized appraisal experience, all of which must meet strict criteria

**Demonstration Report**
Receive credit for a demonstration appraisal report relating to income-producing property that demonstrates the ability to present a properly supported value estimate or opinion evaluating the nature, quality or utility of a parcel of real estate or any interest in, or aspect of, real property, including handling physical incurable depreciation, OR fulfill an approved comparable alternative.

---------------------------

Lenders, government agencies, courts, corporations, investors and individual property owners continually seek out the opinions of designated Appraisal Institute members to guide their real estate decisions because they know our members are true professionals who have made a commitment to being the best in their field. They realize that appraisers holding an Appraisal Institute designation have demonstrated an advanced level of education and experience because our designation requirements exceed those for state licensing and certification.

Achieving an Appraisal Institute professional designation isn't easy, and our members are rightly proud of their accomplishments. Holding a professional designation from the Appraisal Institute denotes a post-graduate level of achievement. In fact, fewer than 15 percent* of all licensed or certified appraisers have earned the right to be called Appraisal Institute designated members. To maintain their designation(s), members must fulfill continuing education requirements on an ongoing basis. This includes periodic attendance at and passing the exams for Standards of Professional Practice courses.

This commitment to professionalism makes Appraisal Institute members the preferred choice for real estate appraisal and analysis services. In addition to providing opinions of market value and traditional appraisal services, designated members may answer your needs in some or all of these areas:
- Arbitration
- Absorption Studies
- Business Valuation
- Counseling
- Consulting
- Condemnation
- Evaluations
- Expert Witness Testimony
- Litigation Preparation
- Cost & Benefit Studies

- Feasibility Studies
- Management Advice
- Market Analysis
- Market Rent Studies
- Market Trend Studies
- Operating Expense Analysis
- Renegotiating Private Mortgage Insurance
- Tax Assessment Review & Advice
- Zoning Testimony

Today and throughout its 70-year history, the Appraisal Institute is the leading organization for professional real estate appraisers. Reflecting their unbiased and objective approach to real property appraisal and analysis, members of the Appraisal Institute are required to adhere to a strictly enforced Code of Professional Ethics and Standards of Professional Appraisal Practice. Appraisal Institute members may hold the prestigious MAI, SRPA and SRA designations. The Appraisal Institute advocates equal opportunity and nondiscrimination in the appraisal profession and conducts its activities in accordance with applicable federal, state, and local laws.

---------------------------

It's easy to find a member of the Appraisal Institute. Simply go to www. appraisalinstitute.org and look for the "Find an Appraiser" option. You can search for designated members by name as well as geographically by city, county, state and metropolitan statistical area (MSA).

Appraisal Institute
550 W. Van Buren St.
Suite 1000
Chicago, Illinois 60607
T 312-335-4100
F 312-335-4400


OR



# INTERBAY
## FUNDING, L.L.C.

Date:   3/24/2004

C04.0055

Michael Lagreca
Lagreca & Quinn Real Estate Services, Inc.
1131 Horsham Rd.
Ambler, PA 19002

Dear Michael Lagreca,

This letter is our engagement letter for the appraisal services described herein; please sign and return this letter to the undersigned, and include an executed copy in your report. This letter represents the authorization of InterBay Funding, LLC ("the client") to prepare an independent appraisal report for the property described below.  Complete compliance, as determined by the client, with the terms of this letter and its attachment(s) is necessary to insure acceptance of the appraisal report and prompt payment of your invoice. The appraiser to which this letter is addressed is expected to complete an interior inspection and sign the report.

Borrower Name:     Shirley R. Brown
Property Address:   2617-2619-2625
City, State, Zip:   Wilmington, DE 19802
Loan or ID Number:  2040542

Fee:                $2,900
Due Date:           4/20/2004

General Requirements:

1. Narrative appraisals are acceptable.  Forms 71-A, 71-B and UCIAR are acceptable with authorization or client.

2. The purpose of the report is to estimate the Fee Simple Interest (unless an existing lease is long-term and below market levels) in accordance with the definition of market value as referenced in the most recent edition of USPAP. An "as is" market value must be reported. When applicable, an allocation to FF & E, business and going concern value is required.

3. Competency - The report must contain a statement as to the competency of the appraiser.  A General Certified appraiser who is experienced with the property type and the subject market must inspect the interior of the property.

4. Departure - The report must conform to the most recent versions of USPAP and FIRREA and shall not invoke the departure provision without the express written consent of the client.

5. Delivery - The Client reserves the right to reduce the fee by five percent (5%) per day for any appraisal delivered past the due date.  The appraiser must notify the Client, preferably in writing, at least one week before the due date of any reasonable delays.

6. Communication - Neither the appraiser nor the appraisal firm may divulge the opinions or conclusions or give a copy of the appraisal report to anyone other than the client or client's designee as specified in writing.

Valuation Requirements:

Cost Approach - (if developed) Comparable land sales, location map, and adjustment grid are required. The source of cost and depreciation estimates must be disclosed. The omission of the cost approach is not considered a departure if the approach is not applicable to the property.

Sales Comparison Approach (required) - Photographs, adjustment grid (whether quantitative or qualitative), and comparable sale property location map must be included. Any adjustments applied for market conditions must be supported by market data. The comparable sales should not require substantial adjustment(s).

Income Approach (required) - Rental photographs and competitive rental location map are required, and the detail must be sufficient to allow independent review. Market data and comments are required to support estimates of vacancy, expenses and capitalization rates. See the Client's Valuation Guidelines for additional details.

Content Requirements:

1. Prior Sales: Analyze and report any sales of the subject property that have occurred within the past three years. Any recent offer, current offer or pending agreement of sale must also be reported and the appraiser must reconcile the appraised value to any such previous sale, offer or pending transaction.

2. Historical Data: All historical data (schedule of renovation costs, rent roll, operating statement, etc.) should be included in the addenda of the report.

3. Zoning: The subject's zoning must be disclosed and an explicit statement discussing the subject's conformance, or the lack thereof, must also be included.

4. Real Estate Taxes: Actual taxes and delinquent taxes must be reported. For valuation purposes, the analysis should address whether the real estate taxes would change (up or down) if the property was sold and the property should be valued accordingly (especially if the current market value significantly differs from the current assessed value).

5. Subject Photographs: Required of interior, exterior and street scenes.

6. Building Sketch: Required in some format, whether completed by the appraiser or via a blueprint. The appraiser must explicitly state the source of the size estimates (gross, rentable, etc) that are provided.

7. Marketing Time: Must be reported.

8. Extent of Inspection: the appraiser must report the areas that were included in the inspection. For apartment properties, all vacant units and at least 50 percent of the overall units must be inspected.

Client Requirements:

1. Appraisal report must comply with all requirements found in this letter and the Client's Valuation Guidelines.

2. Appraisal should not be completed until all necessary documentation (purchase agreement, leases, rent roll, operating statements, and renovation schedule) is provided that is required to support the valuation.

3. At a minimum, the Sales Comparison and Income approaches to value are required for all assignments unless the Client authorizes alternate content.

4. The appraised value should not exceed a current purchase price unless a compelling and verifiable reason is provided. Conversely, if the sales contract includes seller concessions for repairs, closing costs or financing that is atypical to the market then these amounts must be accounted for in the "As Is" value estimate.

5. The appraiser must contact the client if any of the following conditions apply:
   * Subject property consists of multiple tax parcels;
   * Value is allocated to excess or surplus land;
   * Subject property requires substantial renovation or rehabilitation (> $20,000);
   * Subject property is designed for a specific purpose and not adaptable to alternate use(s);
   * If required property information is not being provided in a timely fashion;
   * Estimated marketing time exceeds 12 months.

You may arrange for an interior inspection and obtain all pertinent information by contacting the following:

Property Contact/Phone #:     Janet Madric / 302-658-9644

Please certify one electronic copy of the report uploaded to the InterBay Funding, LLC RIMS site (Preferred Method). The report must be addressed to "InterBay Funding, LLC or its assigns".

If this is not possible, please overnight one copy of the report to each location below:

Cathy Gallagher                         Real Estate Department
InterBay Funding                        InterBay Funding
1301 Virginia Drive, Suite 403          1301 Virginia Drive, Suite 403
Fort Washington, PA 19034               Fort Washington, PA 19034

Upon receipt, sign and return this letter via facsimile to the undersigned.

For InterBay Funding

Cathy Gallagher                         Appraiser Acceptance
InterBay Funding
305-646-4565                            Date: 3/25/04
                                        Signature: _____
Cathy Gallagher                         Printed Name: _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT E. BROWN and<br>SHIRLEY H. BROWN,<br><br>          Plaintiffs,<br><br>     v.<br><br>INTERBAY FUNDING, LLC and<br>LEGRECA & QUINN REAL ESTATE<br>SERVICES, INC.,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 04-617-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

O R D E R

At Wilmington this 21st day of March, 2005, having reviewed plaintiffs' motions to compel and defendants' responses thereto;

IT IS ORDERED that said motions (D.I. 61, 63, 70) are granted in part and denied in part, as follows:

1.  The motions are denied with respect to defendant Interbay Funding, LLC, as I find this defendant's responses to plaintiffs' interrogatories to be appropriate and sufficient.

2.  The motions are granted with respect to defendant Legreca & Quinn Real Estate Services, Inc. ("Legreca & Quinn"), who made no apparent attempt to respond in any substantive way to plaintiffs' interrogatories.  Therefore, **on or before April 5,** 2005, defendant Legreca & Quinn shall respond in a substantive

fashion to interrogatories numbered 9, 10, 11, 12, 13, 14, 15, 17, 18, 22 and 23, all of which refer to the appraisal process. Even if the interrogatories are inartfully crafted, Legreca & Quinn is directed to treat such as contention interrogatories and must explain in response its appraisal analysis, keeping in mind the topic of each interrogatory.

3.   Defendants shall not take plaintiffs' depositions until the above discovery is submitted.


_____
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

ROBERT E. BROWN and,  )
SHIRLEY H. BROWN, h/w,  )    C. A. 04-617 SLR
        Plaintiffs,  )
    v.  )
  )    **JURY DEMANDED**
INTERBAY FUNDING, LLC, and  )
LEGRECA & QUINN REAL ESTATE  )
SERVICES INC.,  )
  )
      Defendants.  )

## AFFIDAVIT

STATE OF P A    :
        :    SS.
Montgomery COUNTY    :

BE IT REMEMBERED, that on this 24th day of March , A.D., 2005,

personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid,

Robert Legreca, who did depose and say that he is a representative of the Defendant Lagreca &

Quinn Real Estate Services, Inc. in the foregoing action and the Responses set forth in Defendant

Lagreca & Quinn's Supplemental Answers to Plaintiffs' Interrogatories Pursuant to Court Order D.I.

72 are true and correct to the best of his knowledge, information and belief.

                        Robert Lagreca

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

                        Notary Public

NOTARIAL SEAL
SHERON M. CAMPBELL, Notary Public
Lower Gwynedd Twp. Montgomery County
My Commission Expires November 13. 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT E. BROWN and, | ) | |
| SHIRLEY H. BROWN, h/w, | ) | C. A. 04-617 SLR |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| INTERBAY FUNDING, LLC, and | ) | |
| LEGRECA & QUINN REAL ESTATE | ) | |
| SERVICES INC., | ) | |
| | ) | |
| Defendants. | ) | |

SUPPLEMENTAL ANSWERS OF DEFENDANT
LEGRECA & QUINN REAL ESTATE SERVICES, INC.
TO PLAINTIFFS' INTERROGATORIES PURSUANT TO
COURT ORDER D.I.72

9.    Why were parcels 2617 and 2619 Market Street (which appear on the city tax roll assessment and have their own parcel numbers, with municipal services, public utilities, and consist of 5,090 sq. ft., zoned commercial), nominated "utilities" instead of parcels or lots consisting of 5,090 sq. ft.?

ANSWER:    Objection to the extent that this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the parcels 2617 and 2619 are not utilities, but rather are part of the subject property's utility. The subject property is a two-story former semi-detached residential dwelling converted into a commercial building with a paved parking lot. The paved parking lot is located on parcels at 2617 and 2619 Market Street. The subject property was appraised as a single unit of commercial property. The appraisal of the subject property took into

consideration the utility of the subject property. It is usual and customary in the ordinary course of the business of Real Estate Appraisal to consider the functional utility of a property. The functional utility is the ability of a property or building to be useful and to perform the function for which it is intended according to current market tastes and standards and encompasses the efficiency of a building's use in terms of its style, design and layout, traffic patterns and physical features. The functional utility of the subject property was appraised at a higher value than those of the comparable properties specifically because of the parking lot on parcels 2617 and 2619 as indicated on page 18 of the Appraisal Report. The Appraisal Report has been produced as part of Rule 26 discovery responses and is already part of the record in this litigation.

10.    Why were parcels or lots 2617 and 2619 containing 5,090 sq. ft. reduced to utilities instead of given best use and value consideration?

ANSWER:    Objection to the extent that this interrogatory mischaracterizes the appraisal report in that the parcels at 2617 and 2619 were not and are not utilities. Without waiving this objection, Answering Defendant Legreca & Quinn was contracted by Co-Defendant Interbay Funding to appraise the subject property located at the address 2617, 2619 and 2625 Market Street as one unit of commercial property. Since the parcels located at 2617 and 2619 were only a portion of the subject property to be appraised, these portions were not segregated from the subject

property would have if vacant. Answering Defendant then concluded that the highest and best use of the subject property was for it to continue in commercial use.

11.    Why were parcels 2617 and 2619 Market Street, with tax roll Assessment numbers, municipal services, public utilities, 5,090 sq. ft., zoned commercial nominated as "utilities" not given a market value?

ANSWER:    Objection to the extent that this Interrogatory mischaracterizes the appraisal report. Without waiving this objection, parcels 2617 and 2619 Market Street were only a portion of the subject property being appraised as one unit of commercial property. As such, these parcels were given a market value as part of the subject property which was given a market value of $140,000.00 under two separate and distinct appraisal approaches.

12.    What are the market values of parcels/lots 2617 and 2619 as "utilities", market value?

ANSWER:    Unknown. Answering Defendant has not determined the separate market value of the parcels located at 2617 and 2619 Market Street segregated from the parcel located at 2625 Market Street. It is not a usual or customary method in the business of Real Estate Appraisal to appraise a single commercial property composed of several tax parcels by appraising each parcel separately.

property but were considered to have best use and value as a portion of the subject property to which they were connected. The subject property site's highest and best use was evaluated by considering the property as a whole both vacant and as improved. As vacant, Answering Defendant evaluated what was physically possible at the site and determined that the site's size, soil and topography did not physically limit its use. Answering Defendant then considered all the permitted uses of the subject property. The property is zoned C-1 which allows it to be developed for a wide variety of commercial uses including retail stores and personal service businesses. After analyzing the physically possible and legally permissible uses of the subject property, Answering Defendant considered the financial feasability and maximum productivity and determined that the highest and best use of the subject site as though vacant would be for commercial development. Answering Defendant then considered the highest and best use of the subject property as improved with a two-story, former semi-detached dwelling converted into a beauty salon with a gross building area of 1,875 plus or minus square feet. As improved, the subject property was available for a commercial use with parking for patrons of the business contained thereon. Answering Defendant deemed that the subject property fits relatively well with its surroundings and that the general market for commercial properties appears to be relatively stable in that area. Answering Defendant further determined that the value of the subject property as improved was considered greater than the value the subject

13.    Why was the Cost Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    The parcels with the address 2617 and 2619 Market Street are only a portion of the subject property for which Co-Defendant Interbay Funding contracted with Defendant Legreca and Quinn to appraise. The subject property was appraised as one total parcel of real estate. The cost approach was deemed to be an unreliable method by which to appraise the subject property because the cost approach is based on a proposition that an informed purchaser would pay no more for the subject property than the cost to produce a substitute property with equivalent utility. The Cost Approach is particularly applicable where the property being appraised has relatively new improvements or unique improvements for which there are few comparable properties. The cost approach requires the appraiser to form an opinion of the cost of all improvements then depreciate them to reflect value lost from physical, functional and external causes. Answering Defendant deemed the Cost Approach as an unreliable method to appraise the subject property due to the subject property's age. Such age made it difficult to accurately form an opinion of depreciation value and, therefore, would not be a reliable method to appraise the subject property, which included the parcels addressed 2617 and 2619 and 2625 Market Street.

14.    Why was the Income Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the Income Capitalization

Approach was used as one of two separate and distinct methods by which the value of the entire subject property was appraised. The subject property includes the three tax parcels 2617, 2619 and 2625 North Market Street. The appraisal was done on the whole subject property as one commercial unit. The appraisal was done on the property as a whole, taking into account all features of the building and land.

15.    Why was the Comparable Approach not used on parcels 2617 and 2619 Market Street?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report. Without waiving this objection, the Sales Comparison Approach was used as one of two separate and distinct methods by which the value of the entire subject property was appraised. The subject property includes the three tax parcels 2617, 2619 and 2625 North Market Street. The appraisal was done on the whole subject property as one commercial unit. The appraisal was done on the property as a whole, taking into account all features of the building and land.

17.    Why was [sic] there only two methods used on evaluation of 2625 Market Street?

ANSWER:    There are generally three accepted approaches available to appraise the value of commercial property, Cost, Sales Comparison, and Income Capitalization. Answering Defendant considered and analyzed each approach and deemed the Cost Approach to be inappropriate for the subject property. 2625 Market Street was only a portion of the subject

property.  Please see the Answer to Interrogatory Number 13 which explains why the cost approach was not deemed to be a reliable method by which to appraise the subject property.

18.    Why were parcels 2617 and 2619 Market Street, (with tax roll assessment numbers, municipal services, public utilities, 5,090 sq. ft. zoned commercial, capable of producing income and being used as collateral to secure the loan,) not given a market value at all?

ANSWER:    Objection to the extent this interrogatory mischaracterizes the appraisal report.  Without waiving this objection, Answering Defendant did not determine the separate market value of the parcels located at 2617 and 2619 Market Street segregated from the parcel located at 2625 Market Street because it is not a usual or customary method in the business of Real Estate Appraisal to appraise a single commercial property unit composed of several tax parcels by appraising each parcel separately. The tax parcels addressed 2617 and 2619 Market Street are only a portion of the subject property which was appraised.  The subject property as a whole, including all three tax parcels, were given a market value of $140,000.00 based upon two separate and distinct appraisal methods.

22.    Why does the appraisal state that the lot which consists of 5,090 sq. ft. would only hold 10 cars, when in fact it will accommodate at least 20 cars?

ANSWER:    Objection to the extent that this Interrogatory mischaracterizes the statements contained within the appraisal report. The appraisal report does not state that any lot would hold only 10 cars.  Without waiving this objection, in order to answer this interrogatory, Answering Defendant

points out that the subject property appraised had a total land area of 6,970 plus or minus square feet including an improvement of a two story masonry building with a gross building area of 1,875 plus or minus square feet and site improvements including concrete curbs, sidewalks, macadam paved parking lot which would hold 10 plus or minus cars and signage.  The designation of "10 plus or minus cars" was used in the report as an indication that there is a parking lot situated within the subject property which is deemed to be ample in size to accommodate patrons' use of the subject property as improved.

23.    Why is the parcel/lot 2625, combined building and parcel/lot space measuring 1,895 sq. ft. given an arbitrary and capricious dollar value, and parcels/lots 2617 and 2619 Market Street, consisting of 5,090 sq. ft. assigned an arbitrary and capricious value that can not be stated?

ANSWER:    Objection to the extent that this Interrogatory maliciously mischaracterizes and maligns the appraisal report by calling it "arbitrary and capricious."  Without waiving this objection, the entire subject property which consisted of all three parcels/lots addressed 2617, 2619 and 2625 Market Street was appraised as a single commercial unit using two separate and distinct appraisal methods which are routinely used within the ordinary course of the business of Real Estate Appraisal and which are recognized by the Uniform Standards of Professional Appraisal Practice.



**COMMONWEALTH OF PENNSYLVANIA**
**GOVERNOR'S OFFICE OF GENERAL COUNSEL**
## DEPARTMENT OF STATE
## LEGAL OFFICE
**2601 NORTH THIRD STREET, P.O. BOX 2649**
**HARRISBURG, PA 17105-2649**

Peter D. Kovach, Prosecuting Attorney
Prosecution Division

Telephone: (717) 783-7200
FAX: (717) 787-0251
E-Mail: pkovach@state.pa.us
*Department's Website: www.dos.state.pa.us*

Date:  April 26, 2005

Robert E. Brown
1024 Walnut Street
Wilmington, DE 19801

RE:  **Complaint against**
**Lagreca, Robert Charles**
**File No. 05-70-03385**

Dear Mr. Brown:

The Prosecution Division of the Bureau of Professional and Occupational Affairs, Legal Office, on behalf of the State Board of Certified Real Estate Appraisers, has completed its inquiry into the complaint that you filed against Robert Charles Lagreca. After careful review of your complaint, we found that we do not have jurisdiction over your complaint because the property appraised is located in the State of Delaware and falls under the jurisdiction of the Delaware Council on Real Estate Appraisers. Accordingly, no action will be taken against Mr. Lagreca at this time and the complaint has been closed.

Thank you for sharing your concerns with the State Board of Certified Real Estates Appraisers. The information you provided will be kept on file and reference to it has been entered into an informational database so that it can be used to determine if there is a pattern of problems with individual licensees. Although the complaint is being closed, the information will be available for use in the future, if needed.

Sincerely,

Peter D. Kovach
Prosecuting Attorney
Commonwealth of Pennsylvania
Department of State

PDK/KAD/kad



## DIVISION OF PROFESSIONAL REGULATION

CANNON BUILDING
861 SILVER LAKE BLVD., STE 203
DOVER, DELAWARE 19904-2467

TELEPHONE: (302) 744-4500
FAX: (302) 739-2711
WEBSITE: WWW.PROFESSIONALLICENSING.STATE.DE.US

April 14, 2005

Robert Brown
1024 Walnut Street
Wilmington DE  19801

Complaint # 19-04-05

Dear Robert Brown:

The Division of Professional Regulation is in receipt of your letter of complaint against Robert C. Lagreca. The Division's investigation unit is responsible for the conduct of investigations related to complaints against professional licensees.

A contact person from the Delaware Counsel on Real Estate Appraisers will be appointed, but any inquiries should be directed to the Division. At the conclusion of the investigation, the Division, in consultation with the contact person, will determine whether to close the case or forward the case to the Attorney General for prosecution. If the Attorney General's office agrees to proceed with a prosecution, an administrative hearing will be held before the appropriate board or commission.

In order to ensure that members of the board or commission can remain unbiased prior to such a hearing, information about the investigation will be shared only with the contact person. You should be aware that communication with other board or commission members could result in those individuals disqualifying themselves from participation in any hearing. Therefore, you are again urged to contact the Division with any information or inquiries pertaining to your complaint.

Sincerely,

*Samuel L. Nickerson*

Samuel L. Nickerson
Investigative Administrator

xc:    Delaware Counsel on Real Estate Appraisers
       19-04-05



**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT E. BROWN and, | ) | |
| SHIRLEY H. BROWN, h/w, | ) | C. A. 04-617 SLR |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| INTERBAY FUNDING, LLC, and | ) | |
| LEGRECA & QUINN REAL ESTATE | ) | |
| SERVICES INC., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT**

STATE OF *PA*    :
                         :    SS.
*Montgomery*    COUNTY   :

BE IT REMEMBERED, that on this *3* day of *March*, A.D., 2005,

personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid,

Robert Legreca, who did depose and say that he is a representative of the Defendant, Legreca &

Quinn Real Estate Services, Inc. in the foregoing action and the Answers set forth in Defendant,

Legreca & Quinn's Answers to Plaintiffs' Interrogatories and Answers to Plaintiffs' Supplemental

Interrogatories are true and correct to the best of his knowledge, information and belief.

_____
Robert Legreca

SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

_____
Notary Public

NOTARIAL SEAL
SHERRY M. CAMPBELL, Notary Public
... Township, Montgomery County
... November 13, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

ROBERT T. BROWN and,
SHIRLEY BROWN, h/w,
                    Plaintiffs,

v.

INTERBAY FUNDING, LLC, and
LEGRECA & QUINN REAL ESTATE
SERVICES INC.,

                    Defendants.

) C. A.  04-617 SLR
)
)
)
) JURY DEMANDED
)
)
)
)
)

DEFENDANT LAGRECA & QUINN REAL ESTATE
SERVICES, INC. ANSWERS TO PLAINTIFFS' INTERROGATORIES

1.      What is an engagement letter?

ANSWER:   Objection.  This interrogatory **seeks legal advice which is beyond the**

          **scope of the rules of discovery.**

2.      Explain the purpose of the engagement letter and its objective?

ANSWER:   Objection.  This interrogatory **seeks legal advice which is beyond the**

          **scope of the rules of discovery.**

3.      . . . . . . . . . . . . . . . . guidelines for an engagement letter?

ANSWER:   Objection.  This interrogatory **seeks legal advice which is beyond the**

          **scope of the rules of discovery.**

4.      . . . was it necessary for the appraiser to contact Interbay Funding if the property

consisted of . . . . . . parcels?

**ANSWER:**   **Objection. This interrogatory is vague and assumes facts which have not been established on the record.**

5.   What was the relationship of Interbay Funding LLC to Lagreca and Quinn Real Estate Services with regard to contract?

**ANSWER:**   **Objection. This interrogatory is vague, incomprehensible as written and seeks legal advice which is beyond the scope of the rules of discovery.**

6.   What is the legal definition of an independent contractor?

**ANSWER:**   **Objection. This interrogatory seeks legal advice which is beyond the scope of the rules of discovery.**

7.   What is the definition of an independent appraisal?

**ANSWER:**   **Objection. This interrogatory seeks legal advice which is beyond the scope of the rules of discovery.**

8.   What was the purpose of limiting the appraised value to the current purchase price of the property?

**ANSWER:**   **Objection. This interrogatory is vague and assumes facts which are contrary to facts which have been established on the record.**

9.   Why were parcels 2617 and 2619 Market Street (which appear on the city tax roll assessment and have their own parcel numbers, with municipal services, public utilities, and consist

of 5,090 sq. ft., zoned commercial), nominated "utilities" instead of parcels or lots consisting of 5,090 sq. ft.?

**ANSWER:** **Objection. This interrogatory is vague, confusing and incomprehensible. In particular it is unclear what is meant by "nominated 'utilities.'"**

10.    Why were parcels or lots 2617 and 2619 containing 5,090 sq. ft. reduced to utilities instead of given best use and value consideration?

**ANSWER:** **Objection.  This interrogatory is vague and incomprehensible.  In particular it is unclear what is meant by "reduced to utilities" and "best use and value consideration."**

11.    Why were parcels 2617 and 2619 Market Street, with tax roll Assessment numbers, municipal services, public utilities, 5,090 sq. ft., zoned commercial nominated as "utilities" not given a market value?

**ANSWER:** **Objection.  This interrogatory is vague and subject to many interpretations and, therefore, cannot be answered in its present form.**

12.    What are the market values of parcels/lots 2617 and 2619 as "utilities", market value?

**ANSWER:** **Objection.  This interrogatory is vague and unduly burdensome to Answering Defendant in time and expense.**

13.    Why was the Cost Approach not used on parcels 2617 and 2619 Market Street?

**ANSWER:** **Objection.  This interrogatory assumes facts which have not been established on the record and is not reasonably calculated to lead to the**

discovery of admissible evidence. **Without waiving this objection, the parcels addressed 2617 and 2619 Market Street are only a portion of the subject property on which Co-Defendant Interbay Funding contracted with Defendant Lagreca and Quinn to appraise.**

14.    Why was the Income Approach not used on parcels 2617 and 2619 Market Street?

**ANSWER:    Objection.   This interrogatory assumes facts which have not been established, contradicts facts which have been established on the record and is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, the parcels addressed 2617 and 2619 Market Street are only a portion of the subject property on which Co-Defendant Interbay Funding contracted with Defendant Lagreca and Quinn to appraise.**

15.    Why was the Comparable Approach not used on parcels 2617 and 2619 Market Street?

**ANSWER:    Objection.   This interrogatory assumes facts which have not been established, contradicts facts which have been established on the record and is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving this objection, the parcels addressed 2617 and 2619 Market Street are only a portion of the subject property on which Co-Defendant Interbay Funding contracted with Defendant Lagreca and Quinn to appraise.**

16.    Explain fully, "any and all Persons" at Interbay Funding, LLC, interest, contact, participation, consultation, and/or relationship with the following:

a.    Application approval;

b.    Approval of Loan;

c.    Selection of Appraisal Company;

d.    Author of Engagement Letter; and

e.    Changing of the terms of the Contract.

**ANSWER:    Objection.  This interrogatory is not addressed to the proper party. Without waiving this objection, Answering Defendant has no knowledge or information which is responsive hereto.**

17.    Why was there only two methods used on evaluation of 2625 Market Street?

**ANSWER:    Objection.   This interrogatory misstates facts which have been established on the record and seeks information which has already been provided to Plaintiffs through initial disclosures made in accordance with Rule 26(a)(1)(B) and is, therefore, unduly burdensome on Answering Defendant as Plaintiffs have had ample opportunity by discovery in this action to obtain the information sought.**

18.    Why were parcels 2617 and 2619 Market Street, (with tax roll assessment numbers, municipal services, public utilities, 5,090 sq. ft. zoned commercial, capable of producing income and being used as collateral to secure the loan,) not given a market value at all?

**ANSWER:    Objection.   This interrogatory assumes facts that have not been established and contradicts facts which have been established on the**

record and, therefore, is unanswerable in its present form.

19.    Why was it necessary to change the terms of the Browns' contract?

**ANSWER:    Objection. This interrogatory is not addressed to the proper party. Without waiving this objection, Answering Defendant has no knowledge or information which is responsive hereto.**

20.    Why were the Browns' required to pay $2,500.00 Dollars for an appraisal and not be told about the engagement letter?

**ANSWER:    Objection. This interrogatory is not addressed to the proper party. Without waiving this objection, Answering Defendant has no knowledge or information which is responsive hereto.**

21.    Why were the Browns' not told that the document faxed to them, labeled as Plaintiffs Exhibit (A-1), actually was page 16, of the appraisal they paid for?

**ANSWER:    Objection. This interrogatory is not addressed to the proper party. Without waiving this objection, Answering Defendant has no knowledge or information which is responsive hereto.**

22.    Why does the appraisal state that the lot which consists of 5,090 sq. ft. would only hold 10 cars, when in fact it will accommodate at least 20 cars?

**ANSWER:    Objection. This interrogatory is beyond the scope and improper under the rules of discovery in that it appears to be requiring an admission of a fact which has not been established.**

hy is the parcel/lot 2625, combined building and parcel/lot space measuring 1,895 ... an arbitrary and capricious dollar value, and parcels/lots 2617 and 2619 Market Street, ... 090 sq. ft. assigned an arbitrary and capricious value that can not be stated?

ANSWER:    Objection. This interrogatory is beyond the scope and improper under the rules of discovery in that it appears to be requiring an admission of a fact which has not been established.

... there no appreciation allowed to the Browns' for the project plans for improvements to the properties 2617, 2619 and 2625 Market Street, by Interbay or Lagreca and

ANSWER:    Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and appears to assume facts which have not been established. Without waiving these objections, the appraisal for which Defendant Lagreca and Quinn contracted to perform was an appraisal of the present value of property in its current, existing condition for the purposes of evaluating collateral on a mortgage.

... the plans and improvements they had intended ... the properties ... Interbay or Lagreca and Quinn?

ANSWER:    Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and assumes facts which have not been established. Defendant Lagreca & Quinn can only answer for its own actions and offers no response hereto that involves, affects or presumes

actions taken by Co-Defendant Interbay.   Without waiving these objections, the appraisal for which Defendant Lagreca and Quinn contracted to perform was an appraisal of the present value of property in its current, existing condition rather than in a future, nonexistent condition.

REGER & RIZZO, LLP
As to Objections


Carol J. Antoff, Esquire
Delaware State Bar I.D. No. 3601
1001 Jefferson Plaza, Suite 202
Wilmington, DE  19801
(302) 652-3611
Attorney for Defendant Legreca & Quinn

*Lagreca & Quinn*

### Real Estate Services, Inc.

Michael A. Lagreca, MAI
Robert C. Lagreca, SRA
Paul D. Quinn, MAI

March 30, 2004

Ms. Cathy Gallagher
Interbay Funding, L.L.C
1301 Virginia Drive, 403
Fort Washington, PA 19034

Re: Complete Appraisal of Real Property
In a Summary Report

2617 - 2625 North Market Street
City of Wilmington
New Castle County, Delaware 19802
Project # - 2040542

Dear Ms. Gallagher:

In fulfillment of our agreement as outlined in the Letter of Engagement, we are pleased to transmit our complete appraisal report on the property referenced above.

The value opinion reported below is qualified by certain assumptions, limiting conditions, certifications, and definitions, which are set forth in the report. We note that this appraisal does not employ any extraordinary assumptions or hypothetical conditions.

This report was prepared for Interbay Funding, L.L.C. and is intended only for their specified use. It may not be distributed to or relied upon by any other persons or entities without the written permission of Lagreca & Quinn Real Estate Services, Inc. This appraisal report has been prepared in accordance with our interpretation of your institutions guidelines, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and the Uniform Standards of Professional Appraisal Practice (USPAP).

This is a complete appraisal presented in a summary report. A summary format of report does not contain all of the information that would normally be found in a self-contained document. A summary report makes a concise presentation of the data and analyses at a level of detail that is less than that in a self-contained report. Nevertheless, the information presented in a summary report is to be sufficient for the client and the intended users of the document to readily understand the appraisal without being misled or confused. The property was inspected by and the report was prepared by Robert C. Lagreca, SRA and Meghan Payne.

This appraisal employs the Sales Comparison Approach and the Income Capitalization Approach. Based on our analysis and knowledge of the subject property type and relevant investor profiles, it is our opinion that these approaches would be considered applicable and/or necessary for market participants. The subject's age makes it difficult to accurately form an opinion of depreciation and tends to make the Cost Approach unreliable. Investors do not typically rely on the Cost Approach when purchasing a property such as the subject of this report. Therefore, we have not utilized the Cost Approach to develop an opinion of market value.





Ms. Cathy Gallagher                                          Lagreca & Quinn Real Estate Services, Inc.
Interbay Funding, L.L.C
Page 2

Based on our Complete Appraisal as defined by the *Uniform Standards of Professional Appraisal Practice*, we have developed an opinion that the market value of the fee simple estate of the referenced property, subject to the assumptions and limiting conditions, certifications, extraordinary and hypothetical conditions, if any, and definitions, "as-is" on March 30, 2004 is:

## ONE HUNDRED FORTY THOUSAND DOLLARS

### $140,000

Based upon transactions that have occurred in the marketplace as well as discussions with knowledgeable market participants, exposure time would have required approximately twelve (12) months.

This letter is invalid as an opinion of value if detached from the report, which contains the text, exhibits, and Addenda.

Respectfully submitted,

Lagreca & Quinn Real Estate Services, Inc.


Robert C. Lagreca, SRA                          Meghan Payne
DE Certified General Appraiser                  Assistant to the Certified
License No. 014935                              Real Estate Appraiser



# INTERBAY
### FUNDING, LLC

Page 1 of 2                                                    Effective Date July 1, 2003

## APPRAISAL REQUIREMENTS CHECKLIST - COMMERCIAL PROPERTIES

**Instructions to the appraiser:** Insert initials or page numbers, attach document to report.

Electronic transfer of reports (including exhibits and Addenda attachments) is encouraged.

Reports will be addressed to the mortgage broker, for InterBay Funding, LLC, or to a designated third party.

InterBay Funding, LLC is not responsible for payment of fees unless the appraiser is engaged by InterBay in writing.

| A. GENERAL REQUIREMENTS | Initials |
|---|---|
| 1. <u>Development/Report Options</u>: Complete Appraisal, Summary Report is required. A Limited Appraisal, Summary Report may be appropriate for <u>some assignments in some lending programs</u>, but this option must be approved in writing by an InterBay Real Estate Analyst prior to preparation of the report. | RCL |
| <u>Limited Summary Approval:</u> | |
| Analyst: _____ Date: _____ | N/A |
| 2. <u>Kick Off Call</u>: Appraisers must discuss the format and content for the assignment with the appropriate Real Estate Analyst prior to initiating the assignment. If the appraiser has not been contacted by an Analyst by the time of inspection, the appraiser must contact an Analyst. | |
| 3. <u>Formats</u>: Narrative reports are preferred. Acceptable "form" reports include: | RCL |
| • Up to 20 units (apartments, mixed-use): FHLMC Form 71B with addenda comments. | |
| • Small commercial: UCIAR with addenda comments (InterBay approval required). | |
| **All reports (narrative or form) must include the information cited below.** | |
| 4. <u>Competency</u>: A Certified General Appraiser must inspect the property. | RCL |
| 5. <u>Definition of Market Value</u>: As referenced in the most recent edition of USPAP. | RCL |
| 6. <u>Report Content</u>: The level of detail must meet or exceed USPAP and FIRREA requirements. The detail of description for the subject property, comparable properties, and analyses must be sufficient to allow independent review. | RCL |
| 7. <u>Departure</u>: The appraiser must not invoke the departure provision without previous approval of the InterBay Funding, LLC Real Estate Department. The omission of the Cost Approach is not considered a Departure if the approach is not applicable to the property. All <u>applicable</u> approaches to valuation must be developed. | RCL |
| Note: if the income capitalization approach is not developed, the appraiser must provide rental comparables and estimate the subject's potential market rent. | |
| 8. <u>Market Value</u>: An as is market value for the real estate must be reported. Any value that is attributable to personal or intangible property, if any, must be separately allocated. | RCL |
| 9. <u>Special Purpose Properties</u>: Appraisers must discuss the appropriate appraisal content for special purpose properties or properties with excess/surplus land with an interBay Real Estate Analyst prior to initiating an assignment. | RCL |

Continued on next page

Copyright 2003 InterBay Funding, LLC. All rights reserved. This material may not be published, broadcast, rewritten or redistributed
www.interbayfunding.com

Regional Real Estate Analysts are available at each InterBay location:

| | | |
|---|---|---|
| Ft. Washington, PA | Frank Muller | 800-588-0522 Ext 4526 |
| Foxborough, MA | Mike Shand , MAI | 800-538-6900 Ext 8691 |
| Hollywood, FL | Ray Feraco, MAI | 800-347-0022 Ext 1509 |
| Glendale, CA | Hector Rodriguez | 866-311-2662 Ext 6995 |