IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT E. BROWN and SHIRLEY H. BROWN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 04-617-SLR ) ) |
| INTERBAY FUNDING, LLC, and LEGRECA & QUINN REAL ESTATE SERVICES, INC., | ) ) ) ) |
| Defendants. | ) |

Robert E. Brown and Shirley H. Brown, Wilmington, Delaware. Pro Se.

David L. Finger, Esquire of Finger & Slanina, Wilmington, Delaware. Counsel for Defendant Interbay Funding, LLC. Of Counsel: David M. Souders and Sandra L. Brickel of Weiner Brodsky Sidman Kider, Washington, D.C.

Carol J. Antoff, Esquire of Reger & Rizzo, Wilmington, Delaware. Counsel for Defendant Legreca & Quinn Real Estate Services, Inc.

**AMENDED**
**MEMORANDUM OPINION***

Dated: February 16, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On June 28, 2004, plaintiffs Robert E. Brown and Shirley H. Brown filed this action against defendants Interbay Funding, LLC ("Interbay") and Legreca & Quinn Real Estate Services ("Legreca & Quinn")[1] alleging discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq., and the Fair Housing Act, 42 U.S.C. §§ 3601 et seq.; negligence; fraud; violations of the Federal Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. §§ 3331 et seq.; and violations of the Uniform Appraisal Standards of Professional Appraisal Practice. (D.I. 1) Pending before the court are cross motions for summary judgment (D.I. 74, 75, 78), and Legreca & Quinn's motions to strike plaintiffs' affidavits. (D.I. 91, 92) For the reasons that follow, defendants' motions for summary judgment are granted and plaintiffs' motion for summary judgment is denied.

---

[1] Although the parties and court documents reference "Legreca", letters from this defendant reflect the spelling as "Lagreca." (See e.g. D.I. 93 at ex. D)  For purposes of this proceeding, the spelling is inconsequential and references are to the identical party.

## II. BACKGROUND

On March 11, 2004, plaintiffs[2] contracted to purchase three parcels of property located at 2617-2619-2625 Market Street, Wilmington, Delaware ("the property"). (D.I. 1) The properties had been on the market for approximately seven years and the sale price was $128,000.[3] (D.I. 76 at ex. 1, p. 3) One parcel contains a two-story, semi-detached commercial building; the other two are paved parking lots. (D.I. 11 at ex. A) The building is a dwelling, built in 1915, that has been converted into a beauty salon. Id. Plaintiffs intended to use the commercial property to expand their restaurant business.[4] (D.I. 9 at 4)

Plaintiffs applied for a mortgage loan through Janet Madrick, a broker for Sunset Mortgage Company. (Id.) A loan application was then submitted to Interbay, the mortgage lender. Interbay approved the loan application subject to an appraisal of

---

[2] Plaintiffs own and operate the Walnut Street Deli ("Deli"). (D.I. 1 at 2) According to the complaint, plaintiffs attempted to purchase the property in issue to expand the Deli business to a location that provided customer parking and, in turn, had the potential to increase revenue. (Id. at 9)

[3] The agreement of sale lists the selling price as $128,000. (D.I. 52, 53, 1)

[4] In addition to contracting to purchase the property in issue, plaintiffs "had also contracted to purchase 2627 Market Street, to expand their operation into an Eat-In Restaurant and Banquet Room by adjoining the 2525 and 2627 first floors through previous entrances that existed in those two adjoining buildings." (D.I. 73, ex. 1 at 5)

the property, to assure that there was sufficient collateral for the loan. Id. Interbay contracted with Legreca & Quinn to perform the appraisal. (Id. at ex. A) The agreement required plaintiffs to pay $2,500 for the appraisal.

Based on other properties within the same zip code, plaintiffs expected the property to be valued "around the $200,000 range." (D.I. 1 at 3) Robert C. Lagreca, a Certified General Real Property Appraiser certified by the State of Delaware and the Commonwealth of Pennsylvania, performed the appraisal. (D.I. 87, 74) He describes his methodology as follows:

> The subject property was appraised as one commercial unit consisting of the two-story dwelling converted into commercial use with on-site parking.
> It is the usual, customary and accepted practice in the business of Real Estate Appraisal to appraise a single unit of commercial property located on several tax parcels as a whole.
> It is not the usual, ordinary or accepted practice in the business of Real Estate Appraisal to appraise a single unit of commercial property located on several tax parcels by valuing each tax parcel separately.
> The appraisal of the subject property as a commercial building with on-site parking conforms with the USPAP and the SPAP.

(D.I. 74, ex. A) As a result, Legreca & Quinn produced an appraisal report which valued the property at $140,000. (D.I. 26, ex. A) After the appraisal, Interbay adjusted plaintiffs' mortgage calculation, agreeing to finance 65% of the purchase price instead of 80% and requiring plaintiffs to make a down

3

payment of 35% of the purchase price instead of 20%. (Id.)

After learning that the terms of the mortgage had changed, plaintiffs had their bank rescind the $2,500 that had been transferred to Legreca & Quinn because they disputed the accuracy of the appraisal. (D.I. 1 at 4) Plaintiffs alleged that Legreca & Quinn only appraised one of the lots and compared the property to those outside the appropriate area. (D.I. 11 at 8; D.I. 9 at 5)

Initially, Interbay agreed to have all three parcels reappraised based on plaintiffs' arguments, but later informed plaintiffs that the original appraisal had taken the two paved lots into consideration. The appraisal considered paved parking lots as utility added to the parcel with the commercial building. (D.I. 9, ex. A at 18) Because none of the lots used for comparison had on-site parking, Legreca & Quinn assigned a higher value to the parcel with the commercial building, as opposed to valuing the two paved lots independently.[5] (Id.) Subsequently, plaintiffs were informed that the appraisal would remain the same because Legreca & Quinn had already made an adjustment for the remaining square footage. (D.I. 1 at 4-5)

Various attempts to "save the deal" with Interbay were unsuccessful. (D.I. 76, ex. 1 at 7) Although plaintiffs then

---

[5]The result was a value based on 1,875 square feet, the size of the parcel with the building, as opposed to 6,980 square feet, the size of all three parcels.

4

received financing offers from two other lenders, they concluded the "lenders terms, rates and conditions were poor" and did not accept the offers. (<u>Id.</u> at 8) The agreement of sale for the property in issue was never consummated.

Plaintiffs instituted this action on June 28, 2004. (D.I. 1) Interbay moved to dismiss on July 19, 2004. (D.I. 9) On August 19, 2004, plaintiffs moved for sanctions against defendants. (D.I. 22) On November 8, 2004, the court denied plaintiffs' motion for sanctions and granted Interbay's motion to dismiss as to plaintiffs' claims that Interbay is liable for Legreca & Quinn's appraisal based on an agency relationship. (D.I. 32, 33) The motion was denied, however, with respect to plaintiffs' claim that Interbay relied on a discriminatory appraisal in violation of 12 C.F.R. § 528.2a. (<u>Id.</u>)

As a result, a scheduling order was entered directing the exchange of discovery and setting deadlines for the filing of dispositive motions. (D.I. 35) Interrogatories were exchanged (D.I. 41, 46, 49, 50, 51, 52, 55, 56, 73), documents propounded (D.I. 53, 58, 66, 71), and plaintiff Robert Brown was deposed. (D.I. 69, 72).

Cross motions for summary judgment and opposition thereto were subsequently filed. (D.I. 74, 75, 76, 78, 79, 80, 82, 83, 85, 86, 87) Legreca & Quinn also moved to strike affidavits filed by plaintiffs. (D.I. 89, 90, 91, 92)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there

must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV. DISCUSSION**

    **A.  Plaintiffs' Allegations**

Plaintiffs assert that the record, as developed through discovery and their independent research, establishes that defendants were engaged in a conspiracy to defraud them through misrepresentation by using a false and "an erroneous [a]ppraisal [r]eport prepared by Legreca & Quinn at the request of Interbay." (D.I. 78 at 3; D.I. 93 at 2)  Plaintiffs contend that Legreca & Quinn have violated USPAP and FIERRA regulations in the preparation of the appraisal and that Interbay knew or should have known of the deficiencies.

Specifically, plaintiffs challenge Robert Lagreca as unqualified to perform the appraisal because he holds a "General Appraisal License" and not a "SRPA or MIA (sic)" certification.[6]

---

[6]According to a document ostensibly authored by the Appraisal Institute and submitted by plaintiffs, "[l]icensed or [c]ertified appraisers are the minimum, while SRA or MAI designated appraisers are at the top of the appraiser hierarchy." (D.I. 93 at ex. B)  The Appraisal Institute is a not-for-profit

7

(D.I. 93 at 4) They contend that "[a]ccording to industry standards of commercial appraisals, three methods should have applied to the valuations of the subject property." (Id. at 8) Because Interbay engaged Legreca & Quinn to perform the appraisal and Interbay knew or should have known that the use of the commercial appraisal was erroneous and defective, plaintiffs argue that Interbay **should be held responsible for plaintiffs' claimed damages.** (D.I. 82) To buttress these arguments, plaintiffs attach copies of affidavits and letters they filed with Delaware and Pennsylvania regulatory agencies.[7] (D.I. 93 at

---

Illinois corporation "organized for general education, research and professional association purposes relating to appraisal services and is, inter alia, dedicated to educating and promoting the interests of real estate appraisers." (D.I. 17, ex. A) According to an attorney for the Appraisal Institute, plaintiff served a subpoena "to command deposition testimony from the Appraisal Institute on whether . . . [plaintiffs'] complaint alleged violations by the defendants of the Appraisal Institute's ethical canons." (D.I. 17, ex. C) The court granted the Appraisal Institute's motion to quash the subpoena. (D.I. 31)

[7]Specifically, plaintiffs filed complaints against Robert Lagreca, the author of the appraisal, with the Delaware Department of Administrative Services and the Pennsylvania Department of State, State Board of Certified Real Estate Appraisers. (D.I. 93, 89, 90) By letter dated April 26, 2005, the Legal Office of the Pennsylvania Department of State advised plaintiffs that its investigation of the charges revealed that Pennsylvania did not have jurisdiction over their complaint because the property in issue is located in Delaware. (Id. at ex. F) As a result, the Pennsylvania Department of State closed its investigation of the allegations. Legreca & Quinn have moved to strike these filings. (D.I. 91, 92). Because the court has construed and considered the submissions as plaintiffs' opposition to defendants' summary judgment motions, the motions to strike are denied.

ex. F)  Plaintiffs submit that the appraisal is so blatantly deficient that an expert witness is unnecessary to establish the standard of care.  (D.I. 93)

Defendants assert that plaintiffs have failed to produce specific facts to support their bald allegations of discrimination.  Even assuming that the appraiser lacked the highest credentials to perform commercial appraisals, defendants submit that this does not constitute discrimination.  Further, absent expert testimony to establish the standard of care governing the appraisal profession, defendants assert that the negligence claims cannot stand.

Because plaintiffs have clearly identified some causes of action and implicated others only vaguely, the court has endeavored to consider as many issues as relevant to the conduct in question.  To that end, the statutory claims are examined first.

### B. Equal Credit Opportunity Act

The ECOA "is an anti-discrimination statute which prohibits creditors from discrimination in the extension of credit." Riethman v. Berry, 113 F. Supp.2d 765, 766 (E.D. Pa. 2000); 15 U.S.C. § 1691 (a).  It "was enacted to protect consumers from discrimination by financial institutions." Midlantic National Bank v. Hansen, 48 F.3d 693, 699 (3d Cir. 1995).  Under the ECOA, "any creditor who fails to comply with any requirement imposed

9

under this sub-chapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." 15 U.S.C. § 1691e(a). To that end, lenders are prohibited from relying on an appraisal that they know, or should know, is discriminatory in violation of the ECOA. See 12 C.F.R. § 528.2a (2004).

To establish a prima facie case under the ECOA, plaintiffs must demonstrate that: (1) they were a member of a protected class; (2) they applied for credit from defendants; (3) plaintiffs were qualified for the credit; and (4) despite qualification, plaintiffs were denied credit. Chiang v. Veneman, 385 F.3d 256, 259 (3d Cir. 2004).

Although plaintiffs assert that the record demonstrates discriminatory conduct in violation of the ECOA, they have not presented any evidence to substantiate their allegations. Specifically, there is nothing demonstrating that they were denied credit based on a discriminatory action. In fact, plaintiffs were not denied credit at all. Instead, Interbay changed the terms originally proposed after the appraisal was submitted. Plaintiffs, however, were still qualified for a loan from Interbay, as well as loans proposed by two other creditors, albeit at a less favorable rate. Therefore, plaintiffs have failed to carry their burden to prove a prima facie case under the ECOA.

To the extent that plaintiffs assert a discrimination claim outside of the scope of the ECOA, based on their argument that the appraisal was discriminatory, the record does not support this contention. Specifically, there is no evidence of record depicting different appraisal methodology being applied to Non-African American property by Legreca & Quinn or used by Interbay. Moreover, plaintiff Robert Brown testified that he has no evidence that Legreca & Quinn appraised properties for other potential buyers by using different methods of appraisal when the property appraised was similar to the subject property. (D.I. 74) See e.g. Rizzitiello v. McDonald's Corp., 2005 WL 545014 at *3 (D. Del. 2005)(evidence of disparate treatment necessary for discrimination claim).

### C.   The Fair Housing Act

The FHA provides:

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605(a). The FHA was enacted to provide fair housing throughout the United States. 42 U.S.C. § 3601. The FHA defines "dwelling" as "any building, structure, or portion of which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is

offered for sale or lease for the construction or location thereof of any such building, structure, or portion thereof." 42 U.S.C. §3602(b). The FHA covers residential real estate and not commercial transactions. See <u>Weignarten Realty Investors v. Albertson's, Inc.</u>, 66 F. Supp.2d 825, 849 (S.D. Tex. 1999); <u>Home Quest Mortgage LLC v. American Family Mutual Ins.</u>, 340 F. Supp.2d 1177, 1184-1185 (D. Kan. 2004). Since it is undisputed that the property in issue was zoned commercial, and that plaintiffs intended to use it for a commercial purpose, plaintiffs' claims under the FHA must fail.

**D.   Negligence**

To state a claim for negligence, plaintiffs must demonstrate that: (1) a defendant owed plaintiffs a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of plaintiffs' injury. <u>New Haverford Partnership v. Stroot</u>, 772 A.2d 792, 798 (Del. 2001).

By asserting that Legreca & Quinn deviated from the applicable standard of care required for real estate appraisers, a claim for professional negligence is implicated.[8] To state a claim for professional negligence, however, the standard of care

---

[8] Inasmuch as plaintiffs seek to hold Interbay liable on an agency relationship with Legreca & Quinn, the court previously rejected this argument by concluding that Legreca & Quinn was acting as an independent contractor. (D.I. 32) To that end, having failed to present expert testimony depicting the appraisal as improper or discriminatory, plaintiffs' discrimination claims against Interbay for relying on the appraisal also fail.

applicable to a professional can only be established through expert testimony. Norfleet v. Mid-Atlantic Reality Company, Inc., 2001 WL 695547 (Del. Super. 2001); Davis v. Maute, 770 A.2d 36, 40 n. 3 (Del. 2001).

Plaintiffs have not presented a real estate appraisal expert to establish the standard of care owed by Legreca & Quinn. (D.I. 74 at 8-10, 19) Absent expert testimony, plaintiffs' claim for professional negligence against Legreca & Quinn fails.[9]

Relatedly, to the extent that plaintiffs contend Legreca & Quinn's conduct violates the professional standards for appraisers under FIRREA and USPAP, the court cannot assess these claims absent expert testimony. Even with the assistance of expert testimony, however, it is unclear whether these claims are even actionable under federal law.

### E. Fraud

To state a claim for common law fraud under Delaware law, plaintiffs must prove: "(1) a false representation made by defendants, usually one of fact; (2) defendants' knowledge or belief that the statement was false; (3) an intent to induce the plaintiffs to act; (4) plaintiffs' justifiable reliance upon the

---

[9] The affidavit of Robert Lagreca was submitted by Legreca & Quinn. As noted above in more detail, Lagreca averred that "[a]ll analyses, opinions and conclusions in the appraisal report provided to Interbay were prepared in conformity with the USPAP, the SPAP and the Code of Professional Ethics." (D.I. 74 at ex. p. 3-4; infra at 3)

13

representation; and (5) damage to the plaintiffs as a result." In re: Student Finance Corporation v. Royal Indemnity Co., 2004 WL 609329 at *3 (D. Del. 2004), citing Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983)).

Considering plaintiffs' allegations in light of this authority, the court finds there is nothing of record establishing a false representation by defendants. On that point, an expert report would be most helpful. Although plaintiffs suggest that Legreca & Quinn's failure to employ certain appraisal methodology and Interbay's reliance thereof is fraudulent, they simply have not presented any evidence in support of their allegations.

Nonetheless, even assuming that the appraisal was faulty, plaintiffs still have not demonstrated that they relied on the appraisal. Because the appraisal was prepared for the sole benefit of Interbay and was not to be distributed to plaintiffs, only Interbay could have reasonably been expected to rely on it. (D.I. 78 ex. B-D) Further, there is nothing of record demonstrating that Interbay misrepresented the appraisal to plaintiffs.

## V. CONCLUSION

For the reasons stated, plaintiffs' motion for summary judgment is denied and defendants' motions for summary judgment are granted. An appropriate order shall issue.

14